State v. Kyle.

---

## THE STATE v. WILLIAM KYLE, Appellant.

### Division Two, June 23, 1914.

1. **DEFILING FEMALE: Step-father.** Where a girl under age lives with her mother and her step-father, the step-father falls within the description of Sec. 4479, R. S. 1909, designed to punish any person who shall defile any female under eighteen years of age who has been confided to his care or protection.

2. ————: ————: **Instructions: Weight of Defendant's Evidence: Of His Wife's.** In a prosecution under Sec. 4479, R. S. 1909, for defiling a step-daughter under eighteen confided to defendant's care or protection, the usual instruction on the weight of defendant's testimony as affected by his interest, coupled with the further statement that in passing upon the testimony of defendant's wife the jury might take into consideration the fact that she was his wife, and her interest in the result, is *held* to be in accordance with approved usage.

3. ————: **Evidence of Prior Sexual Acts: With Others than Defendant: Instructions.** Where a witness testified that he had had intercourse with the prosecutrix about four months before defendant is charged with having defiled her while

under his care, it was erroneous to limit the jury's consideration of that testimony to its effect upon the credibility of the prosecutrix. While the unchastity of the female is no defense, yet in this case this witness's testimony might account for prosecutrix's physical condition when examined by a physician.

4. ——————: **Remarks of Counsel: Newly Discovered Evidence: Appeal.** The misconduct of the State's counsel in asking immediately, and while in the presence of the jury, for a bench warrant for a witness who testified to prior acts of sexual intercourse with the prosecutrix, is not held to be reversible error when standing alone, but when taken in connection with an erroneous instruction on the evidence, and with an affidavit showing newly discovered evidence bearing upon the cause of prosecutrix's physical condition, it satisfies the court that the defendant should have a new trial.

## Appeal from Pemiscot Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED.

*Ward & Collins* and *Shepard, Reeves & McKay* for appellant.

(1) Instruction number 2, given by the court on behalf of the State is error, and does not properly declare the law. This instruction tells the jury in effect at least that if the prosecutrix lived with the appellant and his family as one of his family (which is a comment on the evidence) regardless of her relation in kinship or otherwise, or appellant's acts or control over her or whether her conduct was amenable to her mother or her own looking after and regardless of her minding or listening to any advice of appellant, still this instruction advises the jury that appellant is her confidee notwithstanding the evidence to the contrary that she was barely on speaking terms much less mindable terms to him. And this instruction is so remote from legal reason or any to be found in the books we deem it unnecessary to cite authorities as to how it could have or why it did very materially affect the rights of the appellant. (2) In-

struction number 5, does not properly declare the law in this case, and is error. (3) Instruction number 6, is clearly erroneous and should not have been given by the court on behalf of the State. This instruction takes from the jury the question of the condition of the private organs of the prosecutrix before the time it is alleged that the appellant had sexual intercourse with her, or attempted to do so. (4) Appellant's instruction "B" properly declared the law and should have been given. The above instruction simply requires the jury to find from the evidence one of the necessary elements of the offense charged in the information, that is, that the prosecuting witness, Edna Cole, was actually confided to the care, control or protection of appellant, and such is a necessary fact for the State to prove against appellant and should have been submitted to the jury as a fact for it to find. As said by Judge Kelly in his criminal work, to constitute this offense, one of the necessary elements of the offense is that the prosecutrix was confided to the care of defendant and that he defiled her by carnally knowing her while she was so confided to his care and protection. Kelly's Criminal Law, sec. 556; State v. Buster, 90 Mo. 514; State v. Strattman, 100 Mo. 540. (5) The newly discovered evidence set forth by affidavit and otherwise in appellant's motion for a new trial, clearly entitled appellant to a new trial, and its refusal by the court was error.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

(1) Of the relation existing between prosecutrix and her stepfather, the defendant. State v. Woolaver, 77 Mo. 104; State v. Sibley, 131 Mo. 524; State v. Napper, 141 Mo. 406; State v. Summar, 143 Mo. 232; State v. Hesterly, 182 Mo. 25; State v. Oakes, 202 Mo. 102; State v. Nibarger, 255 Mo. 289. (2) The un-

chastity of the female is not a defense. State v. Summar, 143 Mo. 224; State v. Sibley, 131 Mo. 524; State v. Strattman, 100 Mo. 551; State v. McClaine, 138 Mo. 314; State v. Nibarger, 255 Mo. 289. (3) Given instruction number 2 told the jury that if prosecutrix was living with defendant as a member of his family, then, and in that event, there was a confiding and she was in his care, etc., within the meaning of the statute. State v. Woolaver, 77 Mo. 104; State v. Sibley, 131 Mo. 524; State v. Napper, 141 Mo. 406; State v. Nibarger, 255 Mo. 289. Instruction number 3 given, was on the credibility and weight to be given to the witnesses and their testimony and is a stereotyped instruction that has been given in almost every criminal or civil case. On this we need not burden this brief with citations. Instruction number 5 concerned the testimony of defendant and his wife and is in the form approved by this court in State v. Shaffer, 253 Mo. 320. Instruction number 6 told the jury that the unchastity of prosecutrix could not be interposed by appellant as a defense, but should be considered by the jury as affecting her credibility as a witness, and was correctly given. State v. Summar, 143 Mo. 230; State v. Sibley, 131 Mo. 532; State v. Rogers, 108 Mo. 532; State v. Strattman, 100 Mo. 551; State v. Nibarger, 255 Mo. 289. The bad character of the prosecutrix may be shown for the purpose of affecting her credibility. State v. Wilson, 99 Mo. 284; State v. Terry, 106 Mo. 209; State v. Summar, 143 Mo. 230; State v. Sibley, 131 Mo. 532; State v. Nibarger, 255 Mo. 289. Instruction No. 2, asked by defendant and refused by the court, was to the effect that although the prosecutrix continued to live with her mother and stepfather after their marriage that was not sufficient to show that prosecutrix was under the care, etc., of defendant; that he must have actually assumed and exercised control over her. There was no error in refusing to give this instruction. State v. Woolaver,

77 Mo. 104; State v. Sibley, 131 Mo. 524; State v. Summar, 143 Mo. 232; State v. Napper, 141 Mo. 406; State v. Hesterly, 182 Mo. 25; State v. Oakes, 202 Mo. 102; State v. Nibarger, 255 Mo. 289. (4) Vigilant counsel for appellant did not request the court to rebuke the prosecuting attorney for his remarks. The court declined in the presence of the jury to issue the warrant, and did all counsel for appellant requested. There is no exception saved to the action or nonaction of the court. State v. Green, 229 Mo. 655; State v. Raferty, 252 Mo. 73; State v. Wana, 245 Mo. 563. (5) All of the alleged newly discovered evidence is of an impeaching character, cumulative and of a character not likely to have produced a different result had it been introduced and measured by the rule required in granting a new trial because of newly discovered evidence; the application falls short of meeting these requirements. State v. Miller, 144 Mo. 30; State v. Cushenberry, 157 Mo. 183; State v. McKenzie, 177 Mo. 699; State v. Speritus, 191 Mo. 24; State v. Church, 199 Mo. 605; State v. Estes, 209 Mo. 288; State v. Whitsett, 232 Mo. 523; State v. Walker, 250 Mo. 321; State v. Sebastian, 215 Mo. 87. The granting of a new trial upon the ground of newly discovered evidence is in the sound discretion of the court. Insurance Co. v. Curran, 45 Mo. 142. Absent an abuse of discretion, this court will not interfere. Cook v. Railroad, 56 Mo. 380; Schmitt v. Railroad, 160 Mo. 43; State v. Walker, 250 Mo. 322.

ROY, C.—Defendant was convicted of defiling his stepdaughter, Edna Cole, and sentenced to two years in the penitentiary. He was fifty years old at the time of the trial. He went to Caruthersville in December, 1911, and began boarding with Mrs. Cole, who had been divorced from her second husband, by whom she had three children, Edna, aged fourteen, Olga, aged nine or ten, and Ches-

*Defiling Female.*

ter, aged eight years. She had a son, Kim Wynn, by a former husband. Kim was married and lived near his mother, who, with his help, had bought a home, a house of four rooms. Prior to her marriage to defendant, she did washing for an income. On March 9, 1912, the defendant and Mrs. Cole were married and continued to live in her house. He and his wife slept in one room, and the three children in the adjoining room. There was a door between. Mr. Smith, a brother of Mrs. Kyle, slept in the same room with the children two nights in a week for three or four weeks sometime between the marriage of defendant and the 15th of May, on which latter date Edna complained to her half brother, Kim Wynn, of defendant's mistreatment of her. Wynn and his wife caused Edna to be examined by Dr. Hudgins on May 16, 1912. He found her genital organs swollen and inflamed and the hymen broken, indicating according to his opinion that she had been carnally known within the past month.

Defendant and his wife both testified that defendant did not in any way attempt to control Edna. He testified that she lived there as one of his family. Nellie Wynn, the wife of Kim Wynn, testified that defendant "bossed" Edna and the other children.

Edna testified that about two weeks after defendant's marriage, he came into her room in the night and had intercourse with her; that she threatened to tell her mamma, and he said he didn't care if she did; that she then threatened to tell the marshal, and that he said if she did he would kill her; that he continued to have intercourse with her, in all about a dozen times, once when her grandma Sparks was sleeping in the same room. Defendant testified denying the charge.

Bill Jones testified for the defendant that he was nineteen years of age and had lived close to the home of Mrs. Cole and Edna; that about four months be-

fore defendant's marriage the witness had sexual intercourse with Edna in a corn crib, when she had come for corn shucks as he was shucking corn. Thereupon the following occurred:

"Judge Gossom: Your Honor, I want a bench warrant for this gentleman.

"Mr. Collins: Now, we object to that, getting up before this jury and calling for a bench warrant because it is done only for the purpose of prejudicing this jury.

"By the Court: The court will not issue any bench warrant now, Judge."

The next day Judge Gossom for the State recalled the witness Jones and the following occurred: "Q. Your name is Bill Jones? A. Yes, sir. Q. Are you the same Bill Jones that testified in this case yesterday? A. Yes, sir.. Q. I understand that you want to testify again in this matter this morning? A. Yes, sir. Q. Well, you may state now what you want to say in regard to this matter, just turn and tell the jury? A. I want to tell that I were persuaded to say what I said yesterday. Q. Just state to the jury whether what you said in regard to having intercourse with this little girl was true or not true? A. I never had intercourse with this girl at all; never done nothing with her. Q. And your statement yesterday that you did have was not true? A. Not true. Q. Tell the jury how you come to make this statement? A. Well, they come around after me and told me that I would have to tell it or else I would have to go over the road anyhow. Q. Who told you that? A. Will Kyle. Q. The defendant here? A. Yes, sir."

Jones testified that he first told Hal Jordan that he (witness) had had sexual intercourse with Edna. Jordan, for the defense, testified that Jones told him that he (Jones) had had sexual intercourse with Edna in the corn crib, and that she thought she was in a family way, and that he married to keep from marry-

ing her. He further testified that such conversation occurred in the winter before defendant was married; that Edna's reputation for chastity was bad and that he and Jones were talking about her.

Edna testified that she carried shucks once or twice from the crib, but denied that Bill Jones was there at the time, and stated that her little brother was with her.

Defendant testified that Hal Jordan told him while he was in jail about what Jones had told him, and that he had never made any threats against Jones to get him to testify.

N. V. Lovitt testified that Kim Wynn told him about a month before defendant was arrested that they would separate defendant and his wife one way or another.

The wife of defendant testified that the door between her room and the room where the children slept was sometimes left open at night and sometimes closed, according to the weather; and that Edna did not make any outcry and never complained against defendant. On her cross-examination the following occurred: "Q. Well, you don't know anything about whether your husband had sexual intercourse with your little girl, or not, do you? A. No, but I know he didn't, because it looked funny to me that I wouldn't know it because I was there all the time."

She testified that her son Kim Wynn and Edna were angry because of her marriage with defendant.

Among the instructions the court gave the following:

"2. You are instructed that if you believe from the evidence in this case beyond a reasonable doubt that the said Edna Cole lived with the defendant and his wife as one of the defendant's family, then she was confided to defendant, and was in his care and protection, within the meaning of the indictment, and it is not necessary that she should have been confided

to him by any legal proceedings of a court in order to constitute her in his care and protection.

"5. The court instructs the jury that the defendant is a competent witness in his own behalf, and his testimony is to be weighed by the same rules that govern you in weighing testimony of other witnesses; but in weighing his testimony you may take into consideration the fact that he is the defendant on trial in the case and his interest in the result of such trial. And also the wife of defendant is a competent witness for defendant but you may in passing upon her testimony take into consideration the fact that she is the wife of the defendant and her interest in the result of the trial.

"6. The court instructs the jury in this cause that even if you believe from the evidence that the prosecuting witness, Edna Cole, had sexual intercourse with one Bill Jones, that fact would be no defense in this cause and that such act should be considered by you only for the purpose of affecting the credibility of Edna Cole as a witness and for no other purpose.

"7. The court instructs the jury that although the jury may believe from the evidence that the general reputation of Edna Cole for chastity and virtue was bad, her want of chastity constituted no justification for the defendant having sexual intercourse with her, if you believe beyond a reasonable doubt he did so, but if the jury believe from the evidence that her general reputation for chastity and virtue in the neighborhood in which she lived is bad, that fact may be considered by the jury in determining the credit to be attached to her testimony as a witness."

The court refused the following instruction "B" asked by defendant:

"The court instructs the jury that evidence showing that defendant married the mother of the prosecuting witness, Edna Cole, and the said Edna con-

tinued to live with the family after the marriage of defendant to the mother of the said prosecuting witness, is not sufficient to show that Edna Cole was the ward of defendant, or was under his care, control or trust. The jury must find that defendant did actually assume control of the said Edna Cole as her stepfather, acting as such, before you can find the defendant guilty in this case.''

As a ground of his motion for a new trial the defendant alleged the discovery of new evidence as set out in the affidavits of the witnesses thereto, which affidavits were, by the motion, made a part thereof. The motion was verified by the affidavit of the defendant and contained the following:

''That defendant and his counsel used due diligence upon his trial by making diligent inquiry in the neighborhood of the alleged offense of all persons by whom it could be expected to establish any evidence in his behalf, but did not learn from the witness making said affidavit, nor from any other person or persons or source that the persons making said affidavits were the repositories of the evidence their affidavits disclose, and that owing to the nature of the case the repositories of such evidence withheld the same until after defendant had been tried and convicted; that the evidence disclosed by said affidavits is not cumulative and is very material and would likely change the result and verdict of the jury if a new trial be granted, and that said newly discovered evidence is not merely to impeach prosecutrix, but will also account for the destruction of the hymen of the prosecutrix, and the physical condition in which she was found by the witness Dr. M. H. Hudgins.''

The affidavit of Pete Paul, a half-brother of Edna, stated that he caught Edna and her half-brother Kim Wynn in the act of sexual intercourse at her mother's house, in her mother's absence, soon after the mother's

marriage to defendant, and that he had never told any one because she was his sister.

The affidavit of Susie Conley stated that Edna told her that the defendant had never bothered her, and that Kim Wynn was the only one who ever touched her and that he got her to swear that defendant did it.

The affidavit of Clara Woods stated that Edna told her that Kyle had never mistreated her and that she charged him with it at the instance of Kim Wynn.

I. We are of the opinion that there was no error in instruction numbered 2 given for the State, and no error in refusing the second instruction asked by defendant. The fact that defendant was the stepfather of Edna and that she was living in the same house with her mother and defendant as a member of defendant's family constituted that "confidential relation" which brings him within the statute. In State v. Sibley, 131 Mo. l. c. 525, this court held that the statute was for the protection of females under eighteen years of age who come under the custody, protection and control of stepfathers. It did not pass on the question as to what facts constituted such control. In State v. Napper, 141 Mo. l. c. 406, it was claimed that the girl had never been confided to the defendant in that case but to his wife. This court said: "While the rights of the wife as they existed at common law have been greatly enlarged by courts and statutory enactments, and the rights of the husband correspondingly diminished, he has not become entirely a nonentity, and is yet regarded as the head of the family with power to control the same."

In State v. Oakes, 202 Mo. 86, it was held that a school teacher who after school hours visited his pupil and carnally knew her, was within the statute. The Nibarger case, 255 Mo. 289, so recently decided by

*Construction of Sec. 4479: Stepfather.*

this court, shows no disposition to lessen the beneficent force of the statute.

We certainly concede that a stepfather occupies no such confidential relation to a stepdaughter who lives elsewhere than in his house, and whom he does not assume to control or protect. It will be noticed that the statute does not require that any control shall be exercised. It inflicts a penalty on him who defiles a female who has been committed to his "care and protection."

II. Instruction numbered 5 in regard to the testimony of defendant and his wife is in accordance with the approved usage in such cases. [State v. Newcomb, 220 Mo. l. c. 66; State v. Napper, 141 Mo. l. c. 407.]

**Weight of Testimony: Interest in Trial.**

III. Instruction numbered 6 is erroneous in limiting too narrowly the effect to be given to the evidence as to her intercourse with Bill Jones. Jones's testimony, as first given, was that he had intercourse with her four months before defendant's marriage. That would place it in November, 1911, about six months before she was examined by the physician. It would have accounted for the destruction of the hymen as shown by the physician's testimony. While the unchastity of the female is no defense, yet it certainly is a fact to be considered by the jury in determining whether her physical condition was caused by defendant or by some other person.

**Prior Sexual Acts.**

IV. The act of counsel for the State in calling for a bench warrant for Bill Jones while he was on the stand just after he had testified to his connection with the prosecutrix was very prejudicial to the defendant. There was no

**Remarks of Counsel.**

request by defendant that the court should censure the State's counsel, so that the trial court cannot be placed in error for what occurred. Still in determining the general merits of this appeal we take such conduct of State's counsel into consideration. The next day counsel for the State put Jones back on the stand and he not only denied his former testimony as to such intercourse, but went further and testified that his former testimony was given falsely because the defendant had threatened him. That, too, in face of the fact that he admitted telling Hal Jordan of such intercourse. Jordan corroborated such statement. The defendant testified that it was Hal Jordan who told him about Jones's statement. The facts have a strong tendency to show that Jones's first statement was true and that his retraction was produced by the action of State's counsel. The newly discovered evidence was partly cumulative and partly impeaching evidence merely, but the affidavit of Pete Paul goes to the vital question as to who caused the condition in which the physician found her. We do not hold that the conduct of the State's counsel in reference to the witness Jones is, standing alone, reversible error. We do not pass on that question. We do hold that such incident taken in connection with the erroneous instruction above discussed, and in connection with the newly discovered evidence, satisfies us that the defendant should be given a new trial. This court has recently said in State v. Horton, 247 Mo. l. c. 666, that in such cases prosecuting officers should "avoid injecting into the minds of the jury any matter which is not proper for their consideration, or which would add to the prejudice which the charge itself has produced in their minds." We will add that he should also avoid the appearance of coercing defendant's witness into retracting evidence given in his behalf. Counsel for the State doubtless acted in good faith and under a feeling of indignation that the witness had so

Newly
Discovered
Evidence.

testified, but that fact does not mitigate the destructive effect of his action on the rights of the defendant.

The judgment is reversed and the cause remanded for a new trial. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur; *Walker, J.,* in result.