STATE of Missouri, Plaintiff-Respondent,

v.

Delores COLE, Defendant-Appellant.

No. 9920.

Missouri Court of Appeals, Springfield District.

Jan. 28, 1977.

Motion for Rehearing or Transfer Denied Feb. 22, 1977.

Application to Transfer Denied April 11, 1977.

Claude T. Wood, Dale H. Close, Wood & Close, Richland, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before HOGAN, P. J., FLANIGAN, J., and CAMPBELL and PYLE, Special Judges.

ROBERT LEE CAMPBELL, Special Judge.

Defendant Delores Cole was convicted by a jury of second-degree murder for shooting and killing her husband, Granville Scott Cole. The jury being unable to agree upon punishment, defendant was sentenced by the court to a term of 15 years' imprisonment. Defendant appeals. We affirm.

On November 16, 1973, defendant took a loaded gun from a closet, put it in her pocket, left home, and went to the B. J. Club on Highway 66 east of Lebanon, Missouri. She saw her husband inside the club near the bar hugging and kissing a woman. Approximately 90 people were in the club at the time. Witnesses for the State testified that defendant entered the club, threatened the woman and then shot her husband in the stomach after he put his hands on defendant's shoulders. Another shot was fired as the gun was being taken from defendant by the club's bouncer, Gene Wasmer. Defendant testified that she walked into the club with her right hand on

the gun in her coat pocket, that she did not remember removing the gun and that she did not shoot her husband. Defendant's version of the occurrence was that as her husband approached her, she was grabbed from every direction, two men had hold of her, and she did not know who fired the shots.

■ Defendant first contends the court erred in failing to give a manslaughter instruction. There was no evidence to support the giving of a manslaughter instruction. The State's evidence, believed by the jury, would only support a conviction of first-degree murder or second-degree murder. Defendant's evidence, if believed, would only justify an acquittal, not a conviction of manslaughter. Therefore, no instruction on manslaughter was required at the time this case was tried. *State v. Mudgett*, 531 S.W.2d 275, 280–281 (Mo. banc 1975), cert. denied, 426 U.S. 910, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976).

Defendant next challenges certain rebuttal evidence introduced by the State. After the shooting the victim was taken to the emergency room at Wallace Hospital in Lebanon. Dr. R. W. Froelich treated Scott in the emergency room and arranged for his transfer to Fort Leonard Wood General Hospital for an operation. Scott had been shot about one inch from his navel, the bullet had penetrated vital organs and lodged in his spinal vertebrae, there was massive hemorrhaging, he was in pain, and he was paralyzed from the waist down. Scott knew he could not move his legs and so indicated to Dr. Froelich, as well as saying, "My God, I am hurt bad, do something." In addition, he repeatedly asked the doctor if he was going to make it and stated that he didn't want to die because of what would happen to his wife and children. He did, in fact, die very shortly thereafter on November 17.

Dr. Froelich testified for defendant that after he advised Scott that he probably would not survive, Scott stated, "I didn't mean to shoot myself." On cross-examination the State developed that shortly before this statement, Scott kept making statements to the effect that he did not want to die, that Dee (defendant) would go to jail and there would be no one to take care of the kids. In rebuttal, the State called George Fisher, an emergency room attendant at Wallace Hospital, to testify to further statements made by the deceased. He testified that prior to being told by Dr. Froelich that he probably would not survive, Scott Cole said several times, "why did she shoot me there". Defendant contends that these statements, and the statements made to Dr. Froelich prior to Scott's being advised that he might not live, were inadmissible as hearsay and were not within the exception of dying declarations.

■ The statement, "I didn't mean to shoot myself", was clearly a dying declaration within the exception to the hearsay rule set forth in *State v. Woodard*, 499 S.W.2d 553, 557 (Mo.App.1973). We decline to rule that the statements of the deceased prior to being advised that he probably would not survive were also dying declarations.[1] The trial court correctly permitted the prior inconsistent statements to be admitted into evidence for impeachment purposes, not because they were dying declarations.

The dying declaration of deceased, in light of the State's evidence and deceased's prior statements, casts doubt upon the reason for admissibility of a dying declaration, that a person faced with the prospect of shortly giving account to God will tell the truth. It would appear that deceased's dying declaration was more altruistic than truthful, evidencing a concern for the welfare of his children.

■ We hold that a dying declaration can be impeached by prior inconsistent statements, even though such prior statements are not within the dying declaration exception to the hearsay rule. We can find no

1. Those interested in the haphazard development of the dying declaration exception to the hearsay rule may consult 5 Wigmore, Evidence § 1431 et seq. (Chadbourn rev. 1974), including a list of criticized Missouri cases in the footnote on p. 300.

Missouri case to support this holding. *State v. Rozell,* 225 S.W. 931, 933, 16 A.L.R. 400, 403–404 (Mo.1920); *State v. Reed,* 250 Mo. 379, 385–386, 157 S.W. 316, 318 (1913); and *State v. Dipley,* 242 Mo. 461, 476, 147 S.W. 111, 116 (1912) [cited by State], merely hold that credibility of the declarant of a dying declaration may be impeached. The majority of the decisions in this country on this question hold as we do, as illustrated by *Fleming v. State,* 101 Tex.Cr.R. 19, 274 S.W. 616, 618 (1925).[2] Since the declarant is unavailable for cross-examination to elicit the truth, necessity demands the introduction of inconsistent statements, just as necessity in the first instance led to the admission of dying declarations. Defendant's contention that the court erred in receiving such inconsistent statements is without merit.

■ Defendant finally contends the court erred in failing to grant a new trial on the basis of newly discovered evidence based on facts contained in affidavits filed with her motion. *State v. Harris,* 413 S.W.2d 244, 247 (Mo.1967), requires that newly discovered evidence meet the following criteria: 1) the evidence has come to the knowledge of defendant since trial; 2) it was not owing to want of due diligence that it was not discovered sooner; 3) the evidence is so material it would probably produce a different result on new trial; and 4) it is not cumulative only or merely impeaching credibility of a witness.

■ The affidavit of Delbert E. Moore stated that he was dancing with Elaine Young about 20 feet from the bar when the first shot was fired. This testimony would only go to impeach the testimony of Elaine Young that she saw defendant shoot her husband, and it would not warrant a new trial.

■ The affidavit of Bill McCabe, who testified at trial on behalf of defendant, stated that since the trial, Jerry Cline told him that Gene Wasmer fired the gun that killed Scott Cole. This statement is only hearsay and does not include any competent evidence to be produced at a new trial.

■ The affidavit of Bennie Coleman stated that he saw Gene Wasmer and another man grab defendant, a scuffle started and a shot was fired. We cannot say that this testimony would probably produce a different result on new trial. The trial judge heard three witnesses testify that they saw defendant shoot her husband. In addition, without actually testifying to seeing defendant fire the shots, two other eyewitnesses testified to facts entirely consistent therewith. Defendant's somewhat vague and evasive testimony is the only evidence inconsistent with the State's evidence.

■ The affidavit of defendant's attorney stated only that "It was not due to want of diligence of the defendant or her counsel that defendant or her counsel failed to discover this new evidence sooner", and contains no facts to justify this conclusion. The granting of a new trial on the grounds of newly discovered evidence rests within the sound discretion of the trial court. *State v. Taylor,* 506 S.W.2d 101, 103 (Mo. App.1974); *State v. Lee,* 492 S.W.2d 28, 32 (Mo.App.1973). The court did not abuse its discretion in this instance. From all of the foregoing, it is apparent that the court did not err in denying defendant's motion for a new trial on the basis of newly discovered evidence.

We have carefully examined the record and find no error. The judgment is affirmed.

All concur.

---

2. 3A Wigmore, Evidence § 1033, n. 1 at 1038 (Chadbourn rev. 1970), has collected the authorities on this point.