**STATE of Missouri, Respondent,**

v.

**Fred M. KERR, Appellant.***

**No. KCD 28503.**

Missouri Court of Appeals,
Kansas City District.

May 2, 1977.

Motion for Rehearing and/or Transfer
Denied June 1, 1977.

sheets at 548 S.W.2d 296, was withdrawn from publication by request of the Court.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and SHANGLER and DIXON, JJ.

Appellant Fred M. Kerr (defendant) was charged by indictment with the crime of first degree robbery (Section 560.135 RSMo 1969). He was tried under an amended information invoking the provisions of the Second Offender Act, found guilty by a jury, and sentenced by the court to a term of twenty-five (25) years in the Department of Corrections.

Defendant makes one assignment of error upon which he seeks reversal of the judgment and sentence. He asserts:

"The trial court erred in permitting the rebuttal testimony of witnesses John Clayborne and Larry Bennett insofar as said evidence lacked proper foundation, was irrelevant, constituted proof of separate and distinct crimes and was improper rebuttal evidence."

Obviously, the defendant in this single point on appeal asserts four reasons for the charge of error in the admission of the rebuttal testimony, namely, 1. it lacked proper foundation; 2. it was irrelevant; 3. it constituted proof of separate and distinct crimes; and, 4. it was improper rebuttal. However, the argument portion of the defendant's brief is directed solely to the assertion that the rebuttal evidence complained of was improperly admitted because it did not tend to explain, counteract, repel or disprove evidence offered by the defendant.

A brief summary of the facts is sufficient for the purposes of this appeal.

On December 23, 1974, at about 8:00 p. m., John Clayborne, manager, and Donald Williams, clerk, were working in the Black Star Sundries, a liquor store located at 3301 Swope Parkway, Kansas City, Missouri. Two men entered the store and made some inquiry about the purchase of liquor. Both men then displayed guns and one of them said "This is it, lie on the floor." Clayborne

did so and the robbers then ordered Williams to empty the contents of the cash register into a paper sack and he complied. The men then took Williams' watch, ring and wallet. One of the robbers then returned the wallet because there was no money in it, and then one of them went behind the counter and took Clayborne's money clip. Clayborne and Williams were then told to remain on the floor for two minutes or they would be killed. The robbers then left the store. The money from the cash register amounted to approximately $300.00. The robbery lasted about five minutes.

Both Clayborne and Williams made positive, untainted and unequivocal in-court identification of the defendant as one of the two robbers.

The defendant testified in his own behalf and stated that at the time of the robbery on December 23, 1974, he was at his mother's home at 5042 South Benton, Kansas City, Missouri, watching her house and listening to records while she was at work. He denied any participation in the robbery of the Black Star liquor store and stated that he had never been in that store. He admitted a prior conviction in 1971 on the charge of assault with intent to rob without malice.

On cross-examination, it was brought out that he had also been convicted of armed robbery in 1970. He further stated that a man named Euell Snow, who lived at 3222 East 32nd Street, was going with the defendant's cousin, who also lived at that address, and that he had stayed overnight there on several occasions during the month following December 23, 1974. He again denied any participation in the robbery and denied that he and Snow had been the robbers. He also denied that he had taken any identification from John Clayborne and left it at the Snow address. He denied that he even knew of the existence of the Black Star Sundries Liquor Store. He stated that he "left the streets" in 1971 and did not return until July 25, 1974, apparently serving time on the 1971 armed robbery conviction for which he had been sentenced to five years.

In rebuttal, over the defendant's objection that the proposed rebuttal evidence had no probative value, the state recalled John Clayborne. He identified State's Exhibit No. 2 as his personal permit to sell liquor. He stated that he carried this permit in his money clip. This money clip was the one taken from him during the December 23, 1974 robbery.

The state then called Larry Bennett, an officer on the Kansas City, Missouri Police Department, who testified, on direct examination, that he conducted a search at 3222 East 32nd Street, the Snow residence, on January 15, 1975, during the course of which he discovered the liquor license of Clayborne, State's Exhibit No. 2.

On cross-examination, Officer Bennett in response to interrogation by defense counsel, testified that he gained access to the residence with the consent of Stephanie Snow, who was then under a charge of having possession of some property which had been stolen from Willie's Lounge; that it was one of some 25 or 30 other pieces of identification recovered; that he did not know that Mr. Snow is in the penitentiary under a life sentence; and, that Stephanie Snow was then under suspicion of having possession of stolen credit cards.

At the close of all the evidence, counsel for the defense did not ask for leave to reopen defense evidence to present testimony in answer to the above-summarized rebuttal evidence.

■ Clearly a proper foundation was laid for the admission of the rebuttal testimony in the cross-examination of the defendant which disclosed his friendship with Snow, the residence of his cousin with Snow, and the defendant's visits to the Snow house at 3222 E. 32nd Street following the robbery on December 23, 1974. With this foundation in the record, the identification by Clayborne of his liquor license, State's Exhibit 2; the fact that it was taken from him in the course of the robbery; and, Officer Bennett's testimony of his discovery of the license at the Snow residence during his search thereof, were relevant and admissible facts and circumstances tending to es-

tablish defendant's guilt and participation in the robbery. The fact that persons other than the defendant visited the Snow residence (and could have left the liquor license there) simply affected the weight to be given to such testimony by the jury.

■ Neither did this evidence improperly constitute proof of separate and distinct crimes chargeable to the defendant. In the first place, it was counsel for the defendant who elicited from Officer Bennett the fact that his search of the house was with the consent of Stephanie Snow, who resided there, and was in police custody under a charge of possession of stolen property, and that Euell (Kenneth) Snow was serving a life sentence at the time of trial. If this constituted error, it was injected into the trial by the defense, not the state. Further, it did not constitute proof of any separate and distinct crime of which the defendant was guilty, but at most, that he knew or visited with persons under conviction or charges of violations of the law. There remains the last point, argued by defendant, that the testimony of Clayborne and Officer Bennett was improper rebuttal evidence.

■ The admission or exclusion of rebuttal evidence rests within the sound discretion of the trial court and it is only when a clear abuse of that discretion has occurred that an appellate court should interfere. The rule as to the admission of such testimony is stated in the case of *State v. Williams,* 442 S.W.2d 61, 65[7] (Mo. banc. 1968), as follows:

"Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence. \* \* \* The scope of rebuttal testimony is largely within the sound discretion of the trial court, and unless the court abuses its discretion or the defendant's rights are prejudicially affected, an appellate court will not reverse on that ground even though the rebuttal testimony may not, strictly speaking, be proper rebuttal evidence, \* \* \* "

To like effect see: *State v. Niehoff,* 395 S.W.2d 174, 182[10] (Mo.1965); *State v. Kirk,* 510 S.W.2d 196[4] (Mo.App.1974); *State v. Holland,* 530 S.W.2d 730[11–13] (Mo.App.1975).

■ In light of the defendant's absolute denial of his guilt or participation in the robbery, and his unsupported alibi testimony, the rebuttal evidence here admitted consisted of facts and circumstances tending to "counteract, repel or disprove" such testimony.

Independent research has revealed four Missouri cases (none cited or relied upon by defendant) where convictions were reversed because of the introduction of improper rebuttal evidence. In each of these the evidence adduced was held to be improper in and of itself regardless of the trial stage at which it was introduced, *State v. Phillips,* 233 Mo. 299, 135 S.W. 4[1, 6] (Mo.1911), where the court held the evidence improperly suggested that the defendant was guilty of other crimes. *State v. Cross,* 357 S.W.2d 125[7] (Mo.1962), where the rebuttal evidence consisted of statements of an accomplice not made in furtherance of a conspiracy. *State v. Vainikos,* 366 S.W.2d 423[5] (Mo.banc 1963), where the rebuttal evidence constituted a comment upon the defendant's silence during his in custody interrogation. *State v. Barker,* 249 S.W. 75[1, 7] (Mo.1923), where the court held that the rebuttal evidence was an attack upon the defendant's character which had not been placed in evidence.

The infirmities (or similar grounds for any claim of incompetency) apparent in *Phillips, Cross, Vainikos,* and *Barker,* supra, are not present in the case at bar. The evidence of the defendant's participation in the robbery involved is strong and convincing. The conclusion is irresistible that the trial court did not abuse its discretion in permitting the state's rebuttal testimony and that the defendant's rights were not prejudicially affected thereby.

Accordingly, the judgment is affirmed.

All concur.