STATE of Missouri, Respondent,

v.

Johnnie TAYLOR, Appellant.

No. 61269.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1979.

Rehearing Denied Dec. 6, 1979.

Richard Burke, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM:

This case was transferred by order of this Court after opinion by the Missouri Court of Appeals, Eastern District. It was argued and submitted here on September 12, 1979. The opinion of Judge George F. Gunn, Jr., in the Court of Appeals is adopted, substantially as originally written, without quotation marks.

Johnnie Taylor was convicted in a trial by jury of robbery in the first degree and was sentenced to fifteen years imprisonment pursuant to the Second Offender Act. He now appeals the conviction, citing as error: (1) the prosecutor's display of police records during the cross-examination of a defense witness; (2) the prosecutor's improper attempts to impeach the defense witness; (3) the trial court's refusal to admit surrebuttal testimony; (4) the refusal to grant a new trial based upon newly discovered evidence. We affirm.

On October 8, 1976, at approximately 6:00 P.M., a Kroger store in St. Louis was robbed. The manager of the store testified that three to four armed men entered the premises, forced the guard to give up his weapon, and proceeded to empty the cash registers. One of the robbers leaped on the bottle collection bin and vaulted over a plexi-glass screen into the manager's office. He ordered the manager and an assistant to leave the office, then emptied the cash drawer. At trial, the manager identified Taylor as one of the four men involved in the robbery and stated that he had selected a photograph of Taylor from a group of six photos shown to him by police officers on the day after the robbery. Another witness, a customer, also made an in-court identification of Taylor and further testified that he had identified him in a lineup. Both witnesses agreed that only one of the robbers vaulted into the manager's office area and both testified that Taylor was the

nimble offender. An investigating police officer who dusted for fingerprints at the top of the plexi-glass screen recovered a palm and fingerprint from the glass. Neither matched those of Taylor.

Taylor offered Ray Washington, field operation's coordinator for the Human Development Corporation of St. Louis, as an alibi witness. Mr. Washington testified that Taylor kept an appointment with him at 6:00 P.M. on the night of the robbery at a location some distance away from the Kroger store. In support of this statement Washington presented a photocopy of a page from a 1976 logbook which listed the Taylor appointment. It was developed that Washington kept a log of all appointments in the normal course of business; that the particular entry was recorded in his handwriting; that the photocopy was made on June 6, 1977, when Washington received a request for the information from Taylor's attorney; and that between June 6 and the trial on July 11, 1977, the original logbook was misplaced. With the exception of one listing on the photocopy page, Washington claimed that he personally recorded the remaining entries. One of Washington's business cards, allegedly given to Taylor with a time, 6:00 P.M., and date, October 8, 1976, written in Washington's handwriting on the back, was received in evidence. During cross-examination, Mr. Washington admitted that he had been convicted of a felony for which he had been incarcerated but denied knowledge of two other felony convictions alluded to by the prosecutor. He also admitted that he had visited Taylor in jail prior to trial but was very vague about the purpose of the visit and stated that he had not discussed the existence of the log entry which could substantiate Taylor's alibi.

The State presented rebuttal evidence by a handwriting expert who testified that identical script recorded the appointment information on the back of Washington's business card and in the logbook. However, in contradiction to Washington's testimony, the expert concluded that the remaining

notations on the photocopied log sheet were by a different author.

During the cross-examination of Washington on his conviction record, the prosecutor produced a Missouri State Highway Patrol record sheet and "Hoover" report. Defense counsel objected, complaining that the prosecutor should not be "flashing things around"; that the documents were insufficient proof of prior convictions and that the prosecutor's actions would have an improper prejudicial effect on the defendant before the jury. The prosecutor's response was that the documents were being utilized in good faith. Washington, after first admitting only one prior felony, did on cross-examination admit to a second offense for issuing an insufficient funds check, which he claimed he did not know was a felony. Washington steadfastly denied pleading guilty to a third charge of uttering a forged instrument.

■■■ Assigning the trial court's failure to sustain his objection as error, appellant maintains that the display of the documents, which could not be admitted as evidence of a conviction, nevertheless bolstered in the jury's mind the possibility that Washington had an extensive police record. We believe that the prosecutor's inquiries and the trial court's actions were proper. The Missouri rules of evidence provide that any person who has been convicted of a crime is, notwithstanding, a competent witness. However, his credibility may be challenged by proof of conviction, either by the record or by his own testimony on cross-examination. § 491.050, RSMo 1978. The prosecutor was able to uncover a previously undisclosed conviction, and his examination with regard to the other charge could hardly be described as prejudicial:

"Q. How about in 1969, were you convicted of a plea of guilty in Clayton, Missouri, on a charge of uttering a forged instrument in 1969? Do you recall that?

"A. [Washington] Uttering a forged instrument? You said uttering a forged instrument?

"Q. Yes, a check charge.

"A. I do not recall it.

"Q. You don't recall that? All right. . . . ."

[*Compare: State v. Amos*, 490 S.W.2d 328 (Mo.App.1972).] The State had an absolute right to demonstrate the prior convictions of the witness for the purpose of impeachment, *State v. Sullivan*, 553 S.W.2d 510 (Mo.App.1977), and the statutory limitations placed upon the prosecutor's inquiry were not violated. There is no indication that the jury was aware of the contents of the records held by the prosecutor, and it is too speculative to be of merit to suggest that the jury was so aware. *Hannibal Sales Co. v. Solter*, 551 S.W.2d 936 (Mo.App.1977). But even if the panel was cognizant, the fact that Washington admitted a second conviction mitigates any conceivably detrimental effect. For similar reasons we reject appellant's second argument regarding the continued cross-examination of witness Washington after he had denied any other prior convictions. As the State's inquiry revealed only the nature, date, place and sentence associated with each conviction, the admission of such testimony constituted no error. *State v. Sullivan, supra.* A prosecutor is permitted to further examine a witness who initially fails to disclose all prior convictions. *State v. Payton*, 559 S.W.2d 551 (Mo.App.1977); *State v. Williams*, 532 S.W.2d 826 (Mo.App.1975).

■■■ Appellant next contends that the court erred in refusing to admit surrebuttal testimony offered to counter the impeachment testimony of the handwriting expert. During the course of direct examination, the expert discussed the possible authorship of certain notations on Washington's business card. While it was his opinion that the writing on the back of the card was the product of Washington, he could not identify the penman who had crossed out an old address printed on the front of the card and had written in the new address of the Human Development Corporation. Appellant offered to prove the identify of the writer by surrebuttal, but the court sustained the prosecutor's objection as to relevancy. Clearly, the rejection of irrelevant testimony is a matter which rests within the discre-

tion of the trial court, as does the admission or exclusion of rebuttal evidence. *State v. Kerr,* 548 S.W.2d 295 (Mo.App.1977); *State v. Huff,* 454 S.W.2d 920 (Mo.1970). Only where there is abuse of discretion—and there is no abuse here—may we interfere. Mr. Washington testified that he did not know who wrote on the front of the card and the expert verified that Washington had not. The identity of the true author was simply not at issue.

■ Finally, appellant charges the trial court with error in failing to grant his motion for new trial based on newly discovered evidence. According to appellant, about a month before his trial, it was revealed to him by his city jail cellmate that an individual known as Charles Scruggs [1] had participated in the Kroger robbery and had recently been committed to the state penitentiary. It was subsequently determined that a Charles Scruggs was serving a ten year sentence in the state penitentiary for robbery. Through further investigation, Scruggs' fingerprints were compared with those taken from the plexi-glass screen and found to be identical. As the store manager and the identifying customer testified that only one of the four robbers had entered the manager's office, appellant contends that new evidence as to the identity of the person who jumped into the manager's office is " . . . so material that a different result in a new trial is probable. . . ." *State v. Harris,* 413 S.W.2d 244, 247 (Mo.1967). However, the discovery of Scruggs is of no value to appellant in this appeal. In order to obtain a new trial on the basis of newly discovered evidence, the facts must have come to the knowledge of the accused after the end of the trial. *State v. Harris, supra; State v. Cole,* 547 S.W.2d 494 (Mo.App.1977). While recognizing the disadvantage of conducting an investigation from a jail cell, we find no error in the trial court's denial of the motion for a new trial. As appellant was aware of the information prior to trial—at least a month before—but failed to tell his attorney, the data does not meet the prerequisites of newly discovered evidence. *State v. Nelson,* 532 S.W.2d 806 (Mo.App.1975). Three other requirements of *State v. Harris* that a movant must satisfy in order to obtain a new trial on the basis of newly discovered evidence are:

1) the fact that the evidence did not come to movant's knowledge until after trial must not be owing to any want of due diligence on his part;

2) the evidence is so material that it would probably produce a different result on a new trial; and

3) the evidence is not cumulative only or merely of an impeaching nature.

We feel that appellant does not meet these requirements. Appellant had the key piece of information which easily led to the fitting together of the puzzle once this key was revealed. His due diligence in disclosing this link would have expedited the identification of the fingerprints. Secondly, the jury clearly was made aware of the fact that the fingerprints could not be attributed to appellant, but still convicted him on the basis of the identification of him by two witnesses. Thus, it is debatable whether the inclusion of the name of Charles Scruggs in evidence at trial or in a new trial would make a different result probable. Finally, the evidence at issue is of an impeaching nature in that it impeaches the identification by two witnesses of appellant as one of the robbers and as the one who scaled the plexi-glass office.

The judgment is affirmed.

DONNELLY, RENDLEN, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., and SEILER, J., dissent in separate dissenting opinions filed.

SEILER, Judge, dissenting.

I respectfully dissent. In my opinion we should order a new trial on the basis of

---

1. The name first revealed to defendant by his cellmate was Charles Struggs, but further inquiry brought forth Charles Scruggs.

newly discovered evidence.[1] Because this all depends on certain facts and circumstances, they must first be set forth.

The state's case against defendant depended entirely on the identification of defendant as one of the robbers by the store manager and a customer. There was no physical evidence linking defendant to the crime. The manager said his observation of the robber's face was only 5 to 10 seconds. The customer said his observation was a minute or two. The two witnesses were not in agreement as to the number of robbers—one said there were three, the other that there were four. Both were positive that defendant was the man who jumped, vaulted, or climbed over the plexiglass into the manager's office, that he was wearing sunglasses and a knit skull cap pulled down to his ears, and that there was another of the robbers standing near the office enclosure, dressed the same way—"dressed identical", the manager put it. The two witnesses disagreed as to whether the sunglasses were light or dark colored. Another store employee, however, who was in the office enclosure with the manager and also saw the man jump into the office, was unable to identify the defendant as the man. The manager identified a picture of the defendant from a group of six photographs which the police showed him the day following the robbery, but the manager did not identify anybody in a lineup. The customer mentioned above picked defendant out of a lineup held 16 days after the robbery. Unquestionably, the foregoing is sufficient for the state to make a submissible case against defendant, but it is far from being airtight on identification. It leaves room for a defendant to convince a jury it

was a case of mistaken identity and that he was somewhere else at the critical time.

Central to the issue, under the facts of this case, was the unquestionable fact that whoever it was who scaled the plexiglass wall or partition left a palm print and fingerprint on the glass when he did so. The witnesses were in general agreement on this.

There was a good deal of testimony about the fingerprint and palm print in the state's case. One state witness was Officer William Hetzel, a fingerprint investigator. He recovered an identifiable fingerprint from the plexiglass and delivered the print to the identification section. The identification section said it was not the fingerprint of the defendant, that it was that of some unknown person.

The prosecution took pains to establish that the plexiglass was accessible to every employee and customer of the store and that there was no practical way to eliminate the possibility that the fingerprint might have been made by one of them. One prosecution witness testified that even if a man did put his hand on the glass in vaulting or jumping over it, he would not necessarily leave prints on the plexiglass. The state thus developed the possibility that the unknown fingerprint might be that of some innocent employee, customer or bystander—that it might not have been left by one of the robbers at all and might even have been left there on some other day. This set the stage for the jury to dismiss as inconclusive and of no major consequence the fact that the fingerprint on the plexiglass did not match that of the man the witnesses said was the one who jumped or

---

1. An appellate court can reverse a trial court on this point and order a new trial accordingly. While it does not occur often, it has been done a number of times. See, for example, *State v. Jennings*, 326 Mo. 1085, 34 S.W.2d 50, 54 (1931) where the Court said:

"[M]any cases reported in the state and federal reports demonstrate that appellate courts reverse, remand, and order new trials [on the ground of newly discovered evidence], notwithstanding the statement that such action is within the sound discretion of the trial court."

See also *State v. Butler*, 501 S.W.2d 61 (Mo. 1973); *State v. McClain*, 498 S.W.2d 798 (Mo. banc 1973); *State v. Kyle*, 259 Mo. 401, 168 S.W. 681 (1914); *State v. Bailey*, 94 Mo. 311, 7 S.W. 425 (1887); *State v. Wheeler*, 94 Mo. 252, 7 S.W. 103 (1887); *State v. Murray*, 91 Mo. 95, 3 S.W. 397 (1887); *State v. Koonce*, 504 S.W.2d 227 (Mo.App.1973); *State v. Platt*, 496 S.W.2d 878 (Mo.App.1973).

In all these cases the appellate court ordered a new trial on newly discovered evidence where the trial court had refused to do so.

vaulted over the glass into the manager's office. The fingerprint evidence viewed in this light was not at all inconsistent with defendant's guilt.

Then, just before the state rested, the court read to the jury a stipulation which the parties had entered into as follows:

"It is stipulated to and agreed by the parties that a palm print was discovered and lifted from the exterior plexiglass enclosure at the Kroger store located at 1700 South Jefferson on the east side of said enclosure and that a fingerprint was found on the interior plexiglass surface at the same place.

"It is further stipulated and agreed that the palm print was not of sufficient clarity to be identified, but that the fingerprint was identifiable; that it was compared with the fingerprints of the defendant, Johnnie Taylor, and found not to be the fingerprint of the defendant."

It is to be noted that this stipulation does not commit the state to anything about the identification of the fingerprint other than that it was not that of the defendant.

As stated in the principal opinion, the defendant attempted to establish by the witness, Ray Washington, that defendant was keeping a business appointment with Washington at a location some distance away from the Kroger store at the hour of the robbery. The testimony of Washington, although also far from being airtight, was sufficient to make a submissible issue for the jury and the court properly gave the MAI–CR alibi instruction, 3.22, as requested by defendant.

As would be expected, both sides argued the identification issue, the fingerprint evidence and the alibi testimony to the jury. In particular defendant's counsel argued the fingerprint stipulation and that the evidence from the police was that the fingerprint was not defendant's, that the robber "left his calling card" but didn't get caught, that the state had stopped looking for the real robber and were trying to convince the jury that they had caught him in the defendant. In closing argument the state responded to the fingerprint argument by pointing out that the fingerprint technician did not say the fingerprint was that of the robber, that the man who vaulted over the glass did not necessarily leave a print in so doing, that the fingerprint technician was "very honest" in his testimony.

As we know, the jury resolved the question of identification against defendant. On motion for new trial the defendant offered to show through the St. Louis police records that the print on the plexiglass was that of Charles Scruggs, a convicted felon, who had an identification number with the St. Louis police department, the Missouri highway patrol and the Federal Bureau of Investigation. Counsel further offered to show that Scruggs is currently serving a 10 year sentence in the penitentiary at Jefferson City for robbery. During oral argument before us the parties advised the Court that Scruggs is now confined in the penitentiary in Jefferson City; that the penitentiary records show that he was received at the penitentiary on April 28, 1977; that he had been released from the penitentiary from an earlier confinement on May 4, 1976. Two facts follow therefrom: Scruggs had to be a participant in the Kroger robbery, October 8, 1976, and he had a prior record.

These facts, in my opinion, would have had a significant impact on the jury and could well have tipped the scales in defendant's favor. It would have eliminated the state's attempt to explain away the fingerprint evidence on the premise that it was that of some innocent person—some customer, an employee or some other third person. So long as the state had this explanation open (and it was so argued by the state to the jury in the closing argument) the jury did not have to face up to the fact that if the man who left the fingerprint in going over the glass was the robber, it could not have been defendant. Had the defendant been able to show, however, that the fingerprint belonged to Scruggs, a convicted felon, with a previous record with the St. Louis police department, who was then serving a term in the state penitentiary for robbery, it would have been apparent at

once that the fingerprint was not left accidentally by some innocent person, but that it truly was the fingerprint of the man who vaulted over the plexiglass into the manager's office and so could not have been the defendant. This would have seriously impaired the state's entire case, which as earlier stated, depended on a less than airtight identification by the manager and the customer that it was defendant who vaulted over the glass and into the manager's cubicle. At the same time it would have strengthened the likelihood that the witness, Washington, was correct and credible when he testified that defendant was keeping a business appointment with him at the time in question, not robbing the Kroger store.

This newly discovered evidence is not mere impeachment. It goes directly to the principal issue in the case: the true identity of the man who entered the plexiglass enclosure in the Kroger store on October 8, 1976, a material matter of the highest concern. It is not far-fetched or extravagant to state that were this evidence before a jury in a new trial that a different result is probable. As to what is meant by "probable" or "probably" with reference to the new evidence producing an opposite result on a new trial, the Court said in *State v. Jennings*, 326 Mo. 1085, 34 S.W.2d 50, 54–55 (1931):

"To be given thoughtful consideration, such evidence must be material. What then is meant by the word probably as used in its connection with the rule mentioned? We think and hold that it means nothing more than that the newly discovered evidence submitted was credible and reasonably sufficient to produce a different verdict on a retrial; or, that it must be credible and reasonably sufficient to raise a substantial doubt in the mind of a reasonable person as to the result in the event of a new trial. It is said on this subject in *State v. Bailey*, 94 Mo. 311, loc. cit. 316, 7 S.W. 425, 427: 'Of course, if it be clear that the new evidence will have no effect upon another verdict, the motion for a new trial should be denied; but, if it be doubtful how the evidence

would affect the result, the motion should be granted. The court, in such cases, should not attempt to pronounce for the jury in advance, but should give them an opportunity to pass upon the evidence, if competent and material, and to determine its weight for themselves.' "

Defendant's counsel filed a motion for new trial, setting forth the ground of newly discovered evidence and complied with Rule 78.05 by accompanying it with defendant's affidavit setting forth the facts. No counter-affidavits were filed and no objections were made to the affidavit. "In such posture the affidavit may be considered and is to be accorded its natural probative value." *Bailey v. Hilleman*, 566 S.W.2d 504, 506 (Mo.App. 1978); *McCartney v. Taylor Aircraft Co.*, 140 S.W.2d 95, 99 (Mo.App.1940). The state did not and does not now contest the fact that the fingerprint is actually that of Charles Scruggs, the man now serving time in the state penitentiary, for robbery, nor is there any denial or doubt that defense counsel obtained the information on Scruggs from the Department of Corrections, the penitentiary records and the St. Louis police department or that the information obtained is accurate.

The newly discovered evidence here is so strong that I believe defendant's failure earlier to tell his lawyer about what he had heard as to one Charles Struggs being involved in the robbery should not bar relief. I do not believe the failure was deliberate or devious. It probably was because defendant did not trust the man who gave him the information, because that same man had told the police defendant was one of the robbers, which, of course, defendant insists he was not. In addition, defendant was confined in jail at the time and had no way of knowing that Struggs was actually Scruggs and that the latter had left his fingerprint on the glass enclosure. Defendant was in no position at that point to appreciate what hindsight shows the name would lead to. His not saying anything about it should not be treated as though he were in full possession of the true facts and said nothing.

Otherwise defendant is being held to a lack of due diligence based on what hindsight reveals. He "had the key piece of information which easily led to the fitting together of this puzzle once this key was revealed", says the per curiam, and "[h]is due diligence in disclosing this link would have expedited the identification of the fingerprints." Based on hindsight the same could be said of the prosecution. Scruggs had a previous record with the St. Louis police department and his fingerprints were on file there. The police, also, therefore, had a "key piece of information." Their own files would have shown at any time whose fingerprint it was. But the police did not realize it, anymore than did the defendant as to his information. It would not be fair to charge the police or prosecution with lack of due diligence in furnishing this material evidence to defendant as constituting a failure to disclose on their part, nor is it fair to charge the defendant with lack of due diligence in not sooner informing his lawyer of what he had heard about Struggs (who turned out to be Scruggs).

It is true *State v. Harris*, 413 S.W.2d 244 (Mo.1967) lists four requirements for newly discovered evidence. As best I can ascertain, the requisites for a new trial on the basis of newly discovered evidence were first stated by this Court in *State v. McLaughlin*, 27 Mo. 111, 112 (1858). The rationale was that "[a]pplications for new trials on the ground of evidence discovered after the trial are entertained with reluctance because of the temptation to parties smarting under defeat to make them and on account of the facility with which plausible grounds are manufactured." The court wanted to protect itself from imposition.

But the claim here is not a manufactured one and by its assertion the court is not being imposed upon. After all, the really important part of the newly discovered evidence—the fact that the fingerprint was that of Charles Scruggs, a convicted felon, who at the time of the trial was serving time in the penitentiary for robbery—is not in dispute. This is not a case where there is

something shady or manufactured about the new evidence or where improper pressure has been brought on proposed witnesses. The evidence in question is open and above board, and in my opinion the per curiam does not correctly evaluate its true significance. As pointed out earlier, the fact that in the original trial the jury was made aware that the fingerprint was not that of the defendant, but nevertheless convicted him on the basis of the identification by two witnesses, does not mean that in a second trial where the jury would know that the fingerprint came from a convicted robber that the jury would do the same. On the contrary, it is likely they would not. The state would not be able to explain away the fingerprint as having been made innocently or legitimately (as it did in the first trial). The jury would realize that if the man who made the fingerprint was the one who vaulted into the manager's enclosure (and there is no other way Scruggs' fingerprint would have been there) it could not have been the defendant, and that the two witnesses were simply mistaken in their identification.

No doubt both were honest and sincere in their testimony, but the fact remains that they observed the man whom they identified as the defendant for only a short time (5 to 10 seconds was all the manager saw his face); the man was wearing sunglasses and had a knit skull cap pulled down to his ears, another robber standing near the office enclosure was dressed the same way and also wearing sunglasses, and a third eyewitness, another employee of the Kroger store, in the same place as the manager, was unable to identify defendant as being the man at all. Realizing these shortcomings in the identification testimony and knowing that Scruggs, a convicted robber, left the fingerprint, and with the testimony that defendant was at a job interview elsewhere at the same time, the jury could easily conclude the manager and the customer were mistaken in their identification.[2]

---

**2.** While eyewitness identification testimony is widely used, lawyers and judges know that much of it is unreliable. As Justice Felix Frankfurter has said: "The identification of

We are not being fair or just when we do not give defendant a new trial under the unusual circumstances of this case. There is plain error here. I would reverse and remand for a new trial.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent and concur in the dissenting opinion of Seiler, J. I file this opinion in order to set forth the following. As shown by both the principal and dissenting opinions, the stark realities of this case are that defendant was not only identified as a robber but the eyewitness identification included as a key element that the person the eyewitnesses were identifying was *the one* person who jumped or hurdled over a certain plexiglass shield. In connection with this act on the part of the robber, the eyewitnesses showed the police precisely where he went over that plexiglass shield and, pursuant to that information, the police lifted a hand and thumb print from the plexiglass. This hand and thumb print were not on a single side of the glass but rather the hand print was on one side with the thumb on the other. The fingerprint evidence then became extremely important because, as a matter of credibility, a fingerprint is a rather immutable type of evidence. It does not depend upon the vagaries of memory or eyesight and is, I believe, accepted as one of the strongest items of evidence to show that a particular person was in a particular place. Eyewitness identification has varying degrees of credibility, but so far as I know the fingerprints of a person are exclusive to him.

In this case, it is not only the absence of the defendant's fingerprints from the plates on the plexiglass where the person who

came over the plexiglass would have left prints, but, additionally, the presently identified print of a person who is a known felon.

The evidence with respect to the prints on the glass is admitted by the State to be true.

All human systems are fallible and our system of justice is designed with that in mind and, although cumbersome at times, has for its purpose the conviction of the guilty and the acquittal of the not guilty. Even with all the safeguards that are built into the system, it occurs from time to time that an innocent person is imprisoned. That is one of the reasons why Rule 27.20(c) permits plain errors affecting substantial rights to be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, *when the court deems that manifest injustice or miscarriage of justice has resulted therefrom.*

The person whose print was identified on the plexiglass shield was at the time of oral argument in this case confined in the Missouri State Penitentiary. I, of course, cannot predict whether the fact that he is a felon would be admissible in evidence during a retrial of this case even if the defense called him as a witness. What probably would happen, however, is that the defense would either take his deposition or call him to testify on retrial. He would be called upon to admit or deny that he was at this store on the day of the robbery or if he was ever in the store. He may or may not have an explanation as to how his thumb print got onto one side of the plexiglass shield. I regard the print of this identified felon

strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials." F. Frankfurter, The Case of Sacco and Vanzetti, at 30 (1927). For a collection of authors who have compiled case histories of miscarriages of justice resulting from faulty identifications see Note: Eyewitness Identification, 29 Stanford L.Rev. 969 (1977). "Although improper suggestive procedures used by law enforcement officials in procuring identification evidence

account for many mistaken identifications, the great majority probably are attributable both to the inherent unreliability of human perception and memory and to human susceptibility to unintentional, and often quite subtle, suggestive influences. That most juries, and even some judges, are unaware of the sources of error in eyewitness testimony and consequently place undue faith in its veracity seriously aggravates this problem . . .", Note, Eyewitness Identification, at 970.

being on the plexiglass at the place where the robber was seen by the eyewitnesses to have come over the glass, which print was lifted promptly by the police, to be entirely too significant and strong to permit the present conviction to stand.

In my opinion the failure to grant a new trial so as to permit the introduction of the additional evidence concerning the finger-print as now identified was an abuse of discretion. I am firmly convinced that a miscarriage of justice has resulted from the failure to grant a new trial in this case. I would therefore reverse and remand this cause for a new trial.