**Raymond Earl STIPP, Respondent,**

**v.**

**Cary TSUTOMI KARASAWA, Appellant.**

No. 46637.

Supreme Court of Missouri,

Division No. 1.

Dec. 8, 1958.

Jim Poynor, Joplin, for appellant.

Edward V. Sweeney, Monett, for re-spondent.

COIL, Commissioner.

Plaintiff (respondent here) obtained a verdict and judgment for $12,500 as damages for injuries he allegedly sustained in a collision between his and defendant's automobiles. The trial court directed a plain-tiff's verdict on the issue of liability. On this appeal defendant contends that the trial court erred in admitting and excluding evidence and in refusing to discharge the jury because of allegedly prejudicial argument by plaintiff's counsel, and that the judgment is excessive.

In the early morning of May 3, 1956, plaintiff drove his automobile east on the right side of U. S. Highway 60 at a place about two miles east of Neosho, Missouri. Defendant was driving his automobile west on that highway and, in attempting to pass a westbound truck, collided with plaintiff's oncoming car, causing it to overturn.

Plaintiff, 35 at accident time, was a supervisor of guards at Ft. Crowder and an "extra" fireman for the St. Louis-San Francisco Railway Company. He also operated a used car business at Granby. Plaintiff testified that about an hour after the collision he suffered pain in his upper back and neck, particularly upon movement of his head from side to side. He was examined by Dr. Taylor at Neosho on that day, who prescribed home rest. Plaintiff's pain continued and he returned to Dr. Taylor on May 5. X rays were taken which disclosed no bone damage. Plaintiff returned to work after eleven days and was able to do his guard supervisor work satisfactorily, but was unable to carry on his used car business successfully. He could not make, without great pain and suffering, the trips to Flint, Michigan, to buy the used cars necessary to carry on that business.

Plaintiff testified further that since the accident and to the time of trial he had suffered intermittent pain and numbness in his arms, limitation of motion in turning his head and in raising his arms, and pain in the back of his neck; that he had completed a trip to Flint a month after the accident with great pain and difficulty, then another trip in October 1956 and again had experienced so much pain that it was necessary for him to stop and rest, and that he had made a final trip to Flint in

November with the same experience as to pain and disability; that the intermittent pain which he described occurred every week or two and lasted for as long as four days; and that intermittently but ever since the time of the accident, as we understand, he would be caused to awake during the night because of neck pain and numbness in his arms.

Plaintiff testified further that he did not go to a doctor for treatment from May 5, 1956, when he was X rayed by Dr. Taylor, until May 1957, although he was examined but not treated by a Dr. Hurst some time in 1956 subsequent to May. (Other evidence showed that that examination was September 21, 1956.)

The reasonable conclusion from plaintiff's own testimony is that he had received no *treatment* by any doctor or prescription therefor for the period of a year, despite the continuation during that period of the intermittent pain and disability he described.

The record shows, during the cross-examination of plaintiff's witness, Dr. Samuel D. Papp, whose qualifications as a physician were admitted and who had X rayed plaintiff in connection with Dr. Hurst's examination in September 1956, and who testified at the instant trial to the nature and extent of plaintiff's injuries and their prognoses:

"Q. Doctor, assuming that a person had injury, such as has been described to you by Mr. Sweeney and which you have called whiplash injury to the neck, on May 3rd, 1956, and that thereafter, in May of 1957, was the first treatment ever requested by the patient, assuming those facts would you, and assuming also that the patient has had intermittent pain and complained of numbness in his left arm and occasional numbness in the right arm, would you consider from the period of May 3, 1956 to May of 1957 the patient had adequate medical attention?'

"Mr. Sweeney: Now, I object to that.

"Judge Ginn: Sustained.

"Mr. Poynor: I would like to make an offer.

"Judge Ginn: Very well.

"(out of Hearing of the Jury)

"Mr Poynor: The attorney for defendant offers to prove by the witness, Dr. Papp, that in his opinion there having been no medical treatment from May 5, 1956 until May of 1957 that had there not been this absence of treatment the patients complaints could have very well been minimized or completely cured at this time.

"Judge Ginn: The offer will be refused."

Defendant contends that the trial court erred in sustaining the objection to the question and in excluding the testimony proffered in defendant's offer of proof. The trial court correctly sustained the objection to the question for the reason, irrespective of any other, that it did not correctly hypothesize the facts in evidence in that it stated that plaintiff had received no medical treatment until May 1957, when the testimony was that plaintiff had seen Dr. Taylor for treatment on May 3 and 5, 1956. Hypothetical questions should be predicated on the evidence. Root v. Kansas City Southern R. Co., 195 Mo. 348, 92 S.W. 621, 631(3).

We must, however, sustain defendant's contention that the trial court erred in excluding the proffered testimony of the qualified medical expert, Dr. Papp, and in thereby effectively denying defendant's right to show that in the doctor's opinion plaintiff's complaints of pain would have been minimized or eliminated by trial time had plaintiff received medical treatment during the period from May 5, 1956, until May 1957.

It is true that the offer of proof did not correspond with and in that sense was broader than the question to which the objection had been sustained, and it is true that the technically correct procedure is to follow the sustention of an objection to a question by an offer of proof which corresponds with and is not broader than the question. But here, while the so-called offer of proof was, in the sense noted, broader than the question which preceded it, the proffered testimony related to the same subject as did the question, and there was nothing in the offer which could not properly have been shown by questions to Dr. Papp. See Conner v. First Nat. Bank in Wabash, 118 Ind.App. 173, 76 N.E.2d 262, 267 [11], 77 N.E.2d 598. The purpose of requirements for the observance of certain formalities and rules with respect to offers of proof is to make certain that the trial court and opposing counsel understand what evidence is being offered and thus, the rule that such evidence should be stated in enough detail to demonstrate its relevancy and materiality. See Merk v. St. Louis Public Service Co., Mo., 299 S.W.2d 446, 449 [3, 4]. It seems to us that while the instant offer of proof was not particularly well worded, there can be no question but that it made clear to both court and counsel exactly what plaintiff proposed to show by the doctor, and that the relevancy and materiality of such testimony should have been apparent. Thus, the trial court must have known that, irrespective of all else, the real question it was ruling was defendant's right to adduce testimony on the question of whether plaintiff exercised ordinary care in obtaining medical attention.

Certainly defendant could properly adduce such evidence because "it is indeed a well-settled principle of the law of damages that one who suffers an injury is bound to exercise reasonable care in seeking and accepting medical aid, and that if the injury is aggravated by reason of the injured person's neglect in such respect, then he will not be permitted to recover for such of his injuries and disability as might have been prevented by reasonable efforts on his own part." Adams v. Carlo, Mo.App., 101 S.W.2d 753, 756 [2]; Liddle v. Collins Construction Co., Mo., 283 S.W. 2d 474, 479 [8]. It follows that the expert opinion of the doctor to the effect stated in the proffer would have been relevant and material on the question of whether plaintiff, by failing, under the circumstances in evidence, to have sought and received medical treatment for a year, had failed to exercise ordinary care in securing medical attention and, if so, whether the exercise of ordinary care would have prevented any portion of his damages.

Plaintiff contends, however, that his claimed failure to have minimized his injuries or to have limited the effects thereof was not affirmatively pleaded by defendant and thus the trial court properly refused the offer. In support of that contention, plaintiff has cited the cases noted below which hold or indicate that matters in mitigation of damages should be affirmatively pleaded. None of those cases, however, was an action for damages for personal injuries. Glass v. Heller, Mo.App., 287 S.W. 871, 873 [1]; State ex rel. Armour Packing Co. v. Dickmann, 146 Mo. App. 396, 124 S.W. 29, 32; Simpson v. Ball, 145 Mo.App. 268, 129 S.W. 1017, 1018. And see South Side Buick Auto Co. v. Schmitter, Mo.App., 5 S.W.2d 687, 689 [3, 4]. We find that wherever this court has specifically considered the matter, it has held that in personal injury cases evidence in mitigation of plaintiff's damages is admissible under a general denial. It was so held in Beck v. Dowell, 40 Mo.App. 71. That opinion by the St. Louis Court of Appeals was affirmed in all respects by this court in Beck v. Dowell, 111 Mo. 506, 20 S.W. 209, 210. In Boggess v. Metropolitan St. Ry. Co., 118 Mo. 328, 23 S.W. 159, 162, this court said, "The acts of the plaintiff tending to enhance the injury are admissible in evidence to reduce the amount of the damages under the gen-

eral issue, whether considered as in mitigation or as a rule of limitation of damages, * * *." And we find no statute in Missouri which has changed the common-law rule as set forth in the Beck and Boggess cases. See also 15 Am.Jur., Damages, § 324, p. 764.

■ Plaintiff contends also that the trial court did not err in excluding the evidence in question for the stated reason that there was no "substantial evidence in the record that plaintiff had failed to exercise reasonable care in securing medical attention for his injuries." Plaintiff must mean that there was insufficient evidence even with the proffered opinion to justify a reasonable jury finding that plaintiff had failed to exercise ordinary care to procure proper medical attention. For it is clear that the proffered opinion was itself necessary and relevant evidence on the questions of whether plaintiff failed to exercise ordinary care to secure medical attention and, if so, whether such neglect increased his damages. We have heretofore set forth in some detail plaintiff's testimony as to the nature and extent of his pain and disability during the period from May 6, 1956, until May 1957. We have noted that plaintiff suffered intermittent pain in his neck and numbness in his arms every week or two for periods of as long as four days; that his ability to carry on his used car business was severely curtailed; that he had made three trips to Michigan to obtain used cars but suffered such pain that he had not again attempted such a trip, although he considered such trips necessary to the successful conduct of his used car business. It appears to us that such testimony, together with the proffered expert opinion to the effect that had plaintiff received medical treatment during the year in question the pain and disability described by him would have been minimized or eliminated by trial time, constituted sufficient substantial evidence from which a jury reasonably could have found that plaintiff failed to exercise ordinary care to obtain medical attention and thereby failed to properly minimize or limit the amount of his damages. Glasgow v. Metropolitan St. R. Co., 191 Mo. 347, 89 S.W. 915, 922; Sneed v. Shapleigh Hardware Co., Mo.App., 242 S.W. 696; Koonse v. Standard Steel Works Co., 221 Mo.App. 1231, 300 S.W. 531, 537 [13]; Adams v. Carlo, supra, Mo.App., 101 S.W.2d 756 [3].

We may not know the weight, if any, the jury would have accorded the proffered opinion evidence had it been admitted, but we should assume that had the testimony been admitted defendant would have offered an instruction relating to plaintiff's duty with respect to mitigation or limitation of his damages. Under those circumstances, we should not rule the error in excluding the testimony was nonprejudicial and we cannot know how much less, if any, the jury would have awarded if the excluded testimony had been admitted and a proper instruction given.

Inasmuch as the case must be remanded for a new trial, defendant's contention that the judgment is excessive should not be ruled. Defendant's other contentions of error need not be ruled inasmuch as the situations giving rise to them are unlikely to recur.

■ As noted heretofore, the trial court directed a verdict for plaintiff on the issue of liability of which defendant does not complain. It follows that the portion of the judgment assessing the amount of plaintiff's damages is reversed and the case remanded for a new trial on the issue of damages only.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.