STATE of Missouri, Respondent,

v.

Homer Eugene SULLIVAN, Appellant.

No. KCD 28194.

Missouri Court of Appeals,
Kansas City District.

June 27, 1977.

James D. Worthington, Lexington, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

The appellant (defendant) was charged by information with the felonies of carrying a concealed weapon and conspiracy to commit robbery. These charges were tried before a jury and the defendant was found guilty on both, and the jury assessed his punishment at four years on the first charge and four years, six months, on the second. Thereafter his motion for a new trial was overruled, and he was sentenced to the terms assessed by the jury, to run consecutively. This appeal followed in due course.

The sufficiency of the evidence is not challenged but the defendant raises two points on which he seeks reversal of the judgment. *First*, he asserts that the trial court abused its discretion in refusing to allow him to produce his rebuttal witnesses. *Second*, he states that the court erred in allowing the state to cross-examine the defendant upon the specifics of his prior criminal record when the defendant admitted the prior convictions and pleas. Resolution of these assignments of error requires a somewhat detailed review of the evidence.

On March 22, 1975, in response to information, from a reliable source, that a robbery was planned of the Dover Produce Company, Dover, Missouri, by the defendant, Sheriff Gene Darnell of Lafayette County, Missouri apprehended and arrested the defendant and one Gregory Harry Berger in the town of Dover in the early morning. The defendant was driving a station wagon slowly passing the produce company, and Berger was riding as a passenger. The Sheriff placed the men under arrest and discovered a nine shot pistol under the front seat.

The Dover Produce Company was owned and operated by Alvin and Clarence Hain, brothers. Both of them were acquainted with the defendant, who had been a customer of the store from time to time. The defendant had last been in the store on or about March 14, 1975, with a lady companion. Clarence Hain assisted Sheriff Darnell in the apprehension and arrest of the defendant and Berger on March 22, 1975.

In addition to the testimony of the Hains and Sheriff Darnell, the state offered the official transcript of the testimony of Gregory Harry Berger taken at the preliminary hearing.

Berger testified that he was 20 years old in October of 1974, and a friend of defendant's son. He further stated that he had, on several occasions, discussed and planned with the defendant a project to rob the Dover Produce Company. On some of these sessions, Mrs. Zelda House was present. In accordance with their previous plans around 6:00 a. m. on March 22, 1975, Berger drove

a station wagon which the defendant had borrowed and the defendant drove his own car to Lexington, Missouri, a short distance from Dover. The defendant left his car parked in Lexington and driving the wagon with Berger riding as a passenger, they proceeded to Dover. A pistol was in the front seat between the men. The plan was for the defendant to point out the produce company to Berger; Berger was then later to rob the store by means of the gun; and, then rendezvous with the defendant where the defendant's car was parked in Lexington and give him the money.

Berger testified that the defendant had brought the handgun from his house on the morning of March 22, 1975 and put it in the car. Berger had seen the gun on March 20, 1975. The defendant told Berger that he had stolen the gun and would be in trouble "if he got caught with it". When they were passing the Dover Produce Company on the morning of March 22, 1975, the defendant saw the Sheriff, he told Berger to put the gun under the front seat and Berger did so, where it was found by Sheriff Darnell following the arrests.

The defendant testified in his own behalf. He stated that he had formerly lived in Lafayette County and had upon occasion made purchases of dog food and other items at the Dover Produce Company, both then and after he moved to Kansas City. He categorically denied any plan to rob the Dover Produce Company or having discussed such a venture with Berger or Zelda House. He stated that he had only seen the handgun found by Sheriff Darnell on two occasions, once at the home of Zelda House and once in his own home. On the latter occasion, Zelda House brought the gun to his house late at night. She was having trouble with her husband and was afraid. She placed the gun on a window sill where it remained for some time. He denied carrying the gun from his home to the station wagon on the morning of his arrest; denied that it was in the front seat between him and Berger; stated he did not tell Berger to put it under the seat just before the arrest; denied any knowledge that it was under the seat; and, stated Berger denied to the defendant any knowledge of the gun.

The defendant testified that at the time of his arrest in Dover, he was driving the station wagon which he had borrowed from the owner, Ina Gleason, and was en route through Dover to the town of Corder, Missouri, a short distance from Dover, to pick up a washing machine he had arranged to purchase and to check on a horse owned by his daughter. He stated that Berger was with him to help move the washer.

Other testimony of the defendant on direct and cross-examination pertinent to the second point on this appeal will be hereafter noted.

Defendant offered additional evidence. Ina Gleason stated that she had loaned the station wagon to the defendant and later picked it up at Lexington after his arrest. Margie Garrett testified that when she left Corder, Missouri for Iowa, she had sold "all of my furniture" to the defendant. Donald Borchers was offered as a character witness, as was Elizabeth White, the defendant's former mother-in-law. Thereupon, the defense rested.

The state offered in rebuttal the testimony of Zelda House. She testified as to the conversations and plans with defendant and Berger to rob the Dover Produce Company. She stated that on one occasion about a week before the defendant's arrest, she accompanied him to the Dover Produce Company and both of them made purchases. On that same occasion, the defendant also asked the man in charge for a roll of nickels and when he opened the vault, she observed rolls of coins. Additional discussions of the proposed robbery ensued. She stated that the idea of the robbery originated with defendant and that he also planned the story about the washing machine, if he and Berger were caught. The witness had observed the gun at defendant's house but she did not bring it to his house and she never had the gun in her possession. The defendant later told her it was a "warm" or "hot" gun. This was the gun which was to be used in the robbery.

While the defendant was in jail at Lexington, he asked the witness to see Ina Gleason, the owner of the station wagon, and tell her to say the gun had been in her car for a month before March 22, 1975. Zelda House also testified that the defendant had never told her while he was in jail that he was innocent but had always said he would deny the charge and "stick to the story of going after the washing machine". She stated that after the defendant's arrest, she obtained some of his personal property from his home, consisting of glasses, his clothing, papers, dishes and silverware. She was holding his clothing and glasses (at defendant's request) but she sold the dishes and silverware and applied the proceeds of about thirty to thirty-five dollars against a debt he owed her.

It should be here noted that no objection was made by the defense as to the rebuttal testimony of Zelda House and no point is raised on this appeal with reference to its propriety or admissibility.

After the state had again rested its case, the following colloquy appears:

"MR. WORTHINGTON (Defense Counsel): If it please the Court, I would like to make an offer of proof and some rebuttal to the rebuttal evidence that was offered by the State of Missouri.

The State of Missouri offered as rebuttal evidence, Zelda House, and as part of her testimony she stated, and I don't know whether it was on direct examination or cross-examination, that she had not spoken with Mr. Sullivan in the jail when—or she had spoken with him in the jail but that he had never spoken about his innocence or asked her why she was making these claims against him.

I would offer then as rebuttal a Mr. Baeir, B-a-e-i-r, from the Lafayette County Jail, who claims that he was present on one or more occasions when Mr. Sullivan spoke with Mrs. House, each time denying his complicity in the crime and each time asking her why she was making those charges and statements against him.

My second offer of proof would be Steven Sullivan, the son of the defendant, Eugene Sullivan.

Mr. Steven Sullivan would testify that he was present in Zelda House's home in Independence and has seen Mr. Sullivan's furniture and property, belongings, there on at least one occasion; and since he (sic) has told her (sic) on at least two occasions of her sale of the property and of her keeping the proceeds, or benefits.

These I would offer to show that Mrs. House is not an unbiased witness, not an impartial witness.

That is all I have.

THE COURT: The offer of proof will be denied."

 It is apparent that this offer of proof falls short of the procedural requirements imposed upon a party making such an offer. It has long been the rule in this state that the proper procedure to present and preserve such an offer is to have the witnesses present; put them on the stand; propound the questions; and thus enable the trial court to intelligently rule upon, and an appellate court to review, the propriety and admissibility of the evidence sought to be elicited, *Northwestern Stove Repair Co. v. Cornwall*, 148 Mo.App. 605, 128 S.W. 535, 537[6] (1910); *Bowe v. Kehr*, 345 S.W.2d 224, 227[3] (Mo.1961). Further, such offer "must show all of the facts necessary to establish the admissibility of the testimony sought to be introduced" and it must be "specific and definite" and "not a mere statement of the conclusions of counsel." *Kinzel v. West Park Investment Corporation*, 330 S.W.2d 792, 795–796[1, 4] (Mo. 1959). Close scrutiny of this offer of proof made in this case, as above set forth, discloses that it is completely lacking in the specificity required.

 It is apparent that the testimony offered was for the sole purpose of attacking the credibility of Zelda House's testimony on purely collateral matters, in order to show she was "biased" or "hostile" toward defendant. The only *new* matters in Zelda House's rebuttal testimony (brought out in cross-examination by defense counsel) were that the defendant had admitted his guilt

and never declared his innocence to her while he was in jail, and the fact that she obtained possession of and disposed of some of defendant's personal belongings after his arrest and retained the proceeds. Mrs. House admitted that she took possession of some of his personal property and sold some of it, and applied the proceeds to a debt owed her by defendant. So far as this latter conduct might bear upon her credibility it was already in evidence by her admissions under cross-examination. Therefore the offer as to the testimony of Steven Sullivan did not rebut *new* matters.

■ The offer of surrebuttal testimony of Mr. Baeir "from the Lafayette County Jail" (not further identified and completely lacking in specificity) would not in any way rebut Zelda House's testimony that at some time after his arrest the defendant told her he was going to stick to his "washing machine" story. If the state's evidence was believable (and this jury believed it) it would be a futile and useless act for the defendant to admit his guilt or declare his innocence to Zelda House, since she was, according to her own admission, a party to the conspiracy from the beginning.

■ Furthermore, both such subjects were completely collateral to the issues on trial and, even if such offers of proof in surrebuttal were taken as procedurally sufficient and definite and specific (which they were not), the admission or exclusion thereof rested in the sound discretion of the trial court. *State v. Huff*, 454 S.W.2d 920, 923[7] (Mo.1970); *State v. Rand*, 496 S.W.2d 30, 32–33[3] (Mo.App.1973); *Moe v. Blue Springs Truck Lines, Inc.*, 426 S.W.2d 1, 3[4] (Mo.1968). No abuse of such discretion appears from this record and the appellant's first point is ruled against him.

The three authorities relied upon by appellant in support of this point[1] have been carefully examined and are factually inapposite and are not persuasive here. Indeed, they support the basic concept of the established law as to the broad discretionary powers of the trial court concerning the admission or exclusion of rebuttal (and surrebuttal) evidence, espoused and followed here.

The appellant, as his second contention for reversal, complains that the trial court erred in allowing the "State to cross-examine the defendant upon the specifics of his prior criminal record when the defendant admitted the prior convictions and pleas." In order to appreciate the worth of this allegation of error, the facts as reflected in the transcript must be reviewed. On direct examination of the defendant, his counsel asked him:

"Q. And have you ever plead (sic) guilty or been convicted of a criminal offense?"

In response to this inquiry, the defendant answered:

"A. I have plead (sic) guilty."

No further or other questioning concerning convictions or prior criminal offenses committed by the defendant were offered on direct examination.

On cross-examination, the defendant was asked and responded as follows:

"Q. (By Mr. Lauderdale) (Prosecutor): Mr. Worthington asked you and you answered that you had, as I understand, entered a plea of guilty or had been convicted of a State charge, was that in Missouri or was that in some other state?

MR. WORTHINGTON (Defense Counsel): Objection, it is irrelevant and immaterial and he has already answered the question without being gone into by the prosecution and it is highly prejudicial and I ask the court to both strike the question and the proposed answer.

THE COURT: Well, the objection will be overruled.

"Q. (By Mr. Lauderdale) I think you answered his question that you had been convicted or plead (sic) guilty to a criminal charge and my ques-

---

1. *State v. Williams*, 442 S.W.2d 61 (Mo.1968); *State v. Kirk*, 510 S.W.2d 196 (Mo.App.1974); *State v. Holland*, 530 S.W.2d 730 (Mo.App. 1975).

tion was: Was that in this State or some other State?

A. That was in Arkansas.

Q. Do you recall when it was?

A. '69, I think.

Q. And you received a punishment by confinement, was that in what, the State Penitentiary of Arkansas?

A. Yes, sir.

Q. For how long?

A. I pleaded guilty to escape and I got three years.

Q. Three years for escape?

A. Yes, sir.

Q. Then my memory tells me, Mr. Sullivan, that perhaps I filed a charge or two against you here in this County. Do you recall whether or not you were convicted or plead (sic) guilty to any charges here in this County?

A. Plead (sic) guilty.

Q. And was that more than one charge?

A. I think that I had two insufficient fund checks; two different times I had insufficient fund checks that came back; I have been in your office, yes, sir.

Q. Is it possible that you could have had three checks, one in '74 and two in '75?

A. Possibly, yes, sir. Two different times I went to Court. I'm sorry.

Q. But on three different offenses?

A. On three different offenses, yes, sir.

MR. LAUDERDALE: I believe that is all.

MR. WORTHINGTON: No further questions."

Section 491.050 RSMo 1969, provides: "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; *but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination,* upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." (Emphases supplied)

This statute has been held to confer an absolute right to show prior convictions and the nature and kind thereof for the purpose of impeachment, or as affecting credibility. *State v. Busby*, 486 S.W.2d 501, 503[1] (Mo.1972).

See also: *State v. Morris*, 460 S.W.2d 624, 629[3] (Mo.1970); *State v. McBride*, 231 S.W. 592, 593–594[3] (Mo.1921); *State v. Hacker*, 214 S.W.2d 413, 416[7] (Mo.1948); *State v. Hood*, 313 S.W.2d 661, 663–664[4] (Mo.1958).

This absolute right upon cross-examination is limited only by the restriction that in so doing, the cross-examiner should not be permitted to go into the "details" of the crimes leading to the prior convictions. It is permissible, however, to elicit the nature, dates and places of the occurrences and the sentences resulting therefrom. *State v. Boxley*, 497 S.W.2d 129, 130[1] (Mo. 1973), and cases cited therein.

It is clear from the record above quoted that the trial court did not permit, nor indeed, did the State attempt, to breach the permissible limits in its cross-examination of the defendant. The defendant's second point is ruled against him.

The two cases [2] relied upon by defendant in support of his second point are clearly distinguishable and are not controlling in this case.

The judgment is affirmed.

All concur.

---

2. *State v. Spinks*, 344 Mo. 105, 125 S.W.2d 60 (1939); *State v. Thurman*, 521 S.W.2d 773 (Mo.App. 1975).