James Lee STAPLETON and Christine
Lewis Stapleton,
Plaintiffs-Respondents,

v.

David M. GRIEWE, a Minor, by Melvin
E. Griewe, Guardian ad Litem,
Defendants-Appellants.

No. KCD 30622.

Missouri Court of Appeals,
Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Don B. Roberson, Shughart, Thomson &
Kilroy, Kansas City, for defendants-appel-
lants.

Robert L. Langdon, N. R. Bradley, Brad-
ley, Langdon & Bradley, Lexington, for
plaintiffs-respondents.

Before CLARK, P. J., and DIXON and
SOMERVILLE, JJ.

DIXON, Judge.

Defendant appeals a jury verdict in favor
of plaintiffs husband and wife. The vehicu-
lar collision giving rise to the action oc-
curred prior to the marriage of the plain-
tiffs, but the pleadings are of a single cause
of action in two counts, by a husband and
wife.

The issue resolving the appeal is the de-
fendant's claim that the trial court erred in
refusing to admit proffered testimony by a
policeman that the policeman was in pursuit
of the plaintiff husband, displaying red
lights, and sounding a siren immediately
prior to the collision. The judgment is re-
versed.

The detailed testimony concerning the re-
spective drivers as to the events immediate-
ly prior to the impact may be summarized
briefly. However, the summary of that
testimony and the crucial issue on the ap-
peal require a full understanding of the
immediate scene and the nearby neighbor-
hood.

The collision was between a vehicle operated by the defendant and a "dune buggy" operated by the plaintiff husband and occupied by the plaintiff wife as a passenger. The impact occurred at a "Y" intersection in Higginsville, Missouri. Highway # 13 and Business Highway # 13 form the "Y". The "Y" is situated with the upper part, or branches of the "Y", to the north, and the leg of the "Y" extending to the south. Highway # 13, going to the north on the south edge of Higginsville, branches to the left or northwest at the intersection, and Business Highway # 13 branches right or northeast. The testimony would indicate that the northwest branch of the "Y" is more pronounced and that the northeast branch (Business # 13) is more of a direct northerly continuation of Highway # 13. Approximately a block south of the vertex of the "Y", 29th Street intersects Highway # 13 in a "T" intersection. 29th Street runs east from # 13, and the first north-south intersecting street is Cypress. The intersection of Cypress and 29th is controlled by 4-way stop signs and the "Y" intersection has a stop sign for southbound traffic on Business # 13. There is an establishment referred to as the Husker House at the northeast corner of the intersection of Highway # 13 and 29th Street. The Husker House is so situated on the parking area serving it that a vehicle can circle it.

The collision occurred after dark. The defendant was southbound on Business # 13 and stopped. The defendant then proceeded into the intersection, and the plaintiff's oncoming vehicle swerved left; the impact occurred in the southbound lane of # 13—or the wrong lane for plaintiff. The plaintiff husband says he swerved to the left and into the southbound lane of # 13 "on an impulse" when he realized a collision was imminent. The vehicles came to rest west of Highway # 13.

One of the hotly contested and disputed issues concerning the collision was the speed of plaintiffs' vehicle. The evidence which the trial court excluded is contained in an offer of proof made by defendant's counsel. Prior to the offer, the defendant had elicited from the witness that his name was Carl Shafer, a reserve police officer in Higginsville and the first officer at the scene. He was further permitted to testify that on the night in question he was eastbound on 29th Street. Shafer said he saw a dune buggy proceeding west, that he made a "U" turn in front of his house and proceeded west on 29th Street behind the dune buggy. The questioning of this witness then proceeded as follows:

Q. [By Mr. Roberson] When you turned around, as you've described, on 29th Street, to follow the dune buggy, as you've described, were you able to or what was your intention in following the dune buggy?

MR. BRADLEY: If the Court please, that's irrelevant and immaterial.

THE COURT: The objection is sustained.

Q. What was the speed of the dune buggy you saw oncoming to you on 29th Street?

MR. BRADLEY: I object to that unless he states he has a judgment.

THE COURT: Objection sustained.

Q. Do you have a judgment of the speed of the dune buggy?

A. I do.

Q. What is it?

A. In excess of 50 miles an hour.

Q. And when you turned around to follow it, was there anything that occurred that kept you from going up to get behind it or anything?

MR. BRADLEY: If the Court please, what happened on 29th Street is irrelevant.

MR. ROBERSON: This is an uninterrupted sequence of events.

THE COURT: The objection is sustained.

The court continued to sustain the objections to what occurred on 29th Street and then finally excused the jury. While the jury was out, the defendant made an offer of proof. Because of the critical nature of the offer, it is set forth verbatim.

"Your Honor, the defendant wants to prove that this witness will testify that on seeing the oncoming dune buggy, the dune buggy as traveling some 50 miles an hour in a residential district that has a speed limit of 30 miles an hour, and he immediately made a U-turn to pursue it; and when he did so, the next oncoming intersection was Cypress, about a block and a half from 13 Highway. That the dune buggy did not stop, continued on, and that he had to stop because he wouldn't risk going through a four-way stop. That the dune buggy picked up distance at that point. He has a very large motor in his vehicle; he didn't want to risk putting people's lives in jeopardy at that time. He stopped, and then went on, and saw the dune buggy run a stop sign, as well, at the intersection of 29th and 13 Highway. When he reached that intersection, at 29th and 13 Highway, he knew the dune buggy went north by the way it was turning, but by reason of losing time when he stopped at the intersection before, he looked northward, but he didn't see any vehicle north. He then swung back to the right there at the Husker House, back on 29th, made his left turn, I believe north of Cypress, at which point in time, it was a matter of only less than 30 seconds or a minute or so, as he will describe; that involved northbound, I believe, on Cypress. It might be a different street, but that's the general direction. He got a radio call that there was a wreck at 13 and 13. He swung around and came in north, I believe his evidence is, and arrived at the scene. When he arrived at the scene, he knew from the distances involved from 29th and 13 that he had not seen the car after it turned because he found it in a few minutes off the highway on the west side where it could not be seen from 13 and 29th.

He identified the dune buggy as being exactly the same type and color and all, of the one he was pursuing."

The court denied the offer and instructed defense counsel to desist from any questioning as to what had occurred on 29th Street.

The court had earlier excluded evidence from another witness that the plaintiff had failed to stop for the stop sign at 29th Street and Highway # 13. It was the view of the trial court that any evidence of the operation of the dune buggy before it was northbound on Highway # 13 was irrelevant.

After the jury was brought in, Shafer was permitted to testify that when he reached the intersection of 29th Street and Highway # 13 he looked north and saw no lights. He then turned north, went around the Husker House on the parking area and went east on 29th. He further stated that when he reached Cypress (the first north and south street east of Highway # 13) he received a call (presumably by radio) that an accident had occurred at the "Y" intersection. He went north on Cypress to its intersection with Business # 13 and then southwest to the scene. The physical facts are such that Shafer could not have had more than three or four blocks to traverse before arriving at the scene.

Before the issue of the admissibility of the excluded portion of Shafer's testimony can be addressed, a preliminary procedural issue must be considered. The plaintiffs vigorously assert that the offer of proof is insufficient. Cited in support are *State v. Sullivan*, 553 S.W.2d 510 (Mo.App.1977); *In re Marriage of H. B.*, 559 S.W.2d 73 (Mo. App.1977). In *Sullivan, supra*, this court said that the proper procedure for an offer of proof was to present and preserve such an offer through questions and answers of the witness on the stand, but also noted that the reason for the procedure was that an offer of proof must be definite, specific, and set forth sufficient facts to demonstrate the admissibility of the evidence. *Sullivan* then held "[c]lose scrutiny of this offer of proof made in this case . . . discloses that it is completely lacking in the specificity required." 553 S.W.2d at 513.

Similarly, in *In re Marriage of H. B., supra*, while the court again noted that the summation of testimony by counsel failed to measure up to the required procedure set

forth in *Sullivan, supra,* the court also acknowledged that strict compliance with that procedure could be waived by the trial court and the opposing party. 559 S.W.2d at 74–75.

The rule concerning the appropriate mode of presenting an offer of proof is not an ironclad one requiring rejection of the offer when not made in a question and answer form. Offers of proof have been considered as sufficient to permit review where the proposed testimony is summarized by the offering parties' counsel. *Stipp v. Tsutomi Karasawa,* 318 S.W.2d 172 (Mo.1958); *Baker v. Baker,* 319 S.W.2d 11 (Mo.App.1958); *State v. Umfrees,* 433 S.W.2d 284 (Mo. banc 1968); *State v. Baker,* 598 S.W.2d 540 (Mo. App.1980).

In *Stipp, supra,* defendant's counsel made an offer of proof summarizing testimony of his expert witness. Stating that the offer of proof was not well worded, the Supreme Court emphasized that the offer did make it clear to both court and counsel exactly what the party proposed to show by the expert's testimony and the materiality and relevancy of that testimony. 318 S.W.2d at 175. The offer of proof in that case consisted entirely of counsel's summation of the testimony. The Supreme Court overruled the trial court's exclusion of the proposed testimony of the medical expert based on the summary offer presented. *Id.*

When a party fails to provide the offer in question and answer form, the risk is present that a reviewing court will find the offer insufficient. Such a failure also requires additional effort to determine if the offer appropriately presents a reviewable issue. In the instant case, the issue of the admissibility of the offered evidence is sufficiently focused to permit review. The offer contains a statement of the proposed testimony sufficient to permit examination of the issue of the admissibility of the evidence in the instant case.

The defendant asserts three theories to justify admission of the evidence and hence error on the part of the trial court in excluding the offered evidence: first, that the evidence is inadmissible as direct evidence which is relevant and material on the issue of the plaintiff's speed at the time of the collision. Defendant also asserts the evidence was admissible under the doctrine of curative admissibility since plaintiff had denied any police pursuit on direct examination. As his last theory, the defendant urges that the evidence was proper impeachment of the plaintiff's testimony that he heard no siren and saw no red lights on 29th Street. While a disposition on either of the last two theories might dispose of this appeal, such a disposition would leave open on retrial the substantive issue of admissibility of the offered testimony as direct evidence bearing on the issue of plaintiff's speed at the time of the collision. Without implication of any ruling on curative admissibility or impeachment, the issue will be determined on the question of whether the evidence is relevant and material on the issue of the plaintiff's speed at the time of the collision.

There is a plethora of authority dealing with the issue. In an extensive annotation, cases from almost every jurisdiction are collected in 46 A.L.R.2d 1. Wigmore treats it under the general topic of evidence to prove habit or status. 2 Wigmore, Evidence § 382 (Chadbourn rev. 1979). Literally hundreds of cases have considered the question of the admissibility of prior speed of an automobile as probative on the issue of speed of an automobile at the time of collision. As will be noted, several Missouri decisions have considered the question. There is a temptation to find authority offering substantially identical facts and determine the issue on the basis of that "ribbon match." For example, see *Fugagli v. Camasi,* 426 Pa. 1, 229 A.2d 735 (1967), which, on remarkably similar facts, holds the evidence admissible. The issue of the admissibility of such evidence occurs with enough frequency, however, to justify analysis of the authority with a view to providing guidelines for trial courts in the admission and exclusion of such evidence.

The common denominators found in the case law are materiality, relevancy, and remoteness. First, on the issue of materiali-

ty, material evidence is evidence which relates to an issue in the case. Relevancy, on the other hand, is the "tendency of the evidence to prove a material proposition." Thus, the issue of materiality relates to the issues provable in the case, while relevancy relates to the tendency of the evidence to prove the proposition to which it is directed. McCormick on Evidence § 185 (2d ed. 1972). Remoteness, however, as applied to evidence of the nature here considered, is a qualitative standard and not a temporal or physical measure.

The Missouri cases, in dealing with issues of evidence of prior speed, have been consistent with these concepts. In *Douglas v. Twenter*, 259 S.W.2d 353, 357 (Mo.1953), the court admitted testimony of witnesses who saw a truck approaching the scene of the collision but did not see its path all the way to the collision. A portion of the opinion demonstrates the court's rationale:

> "*One of the ultimate facts to be proved by plaintiff was the truck's speed at the time of the collision.* We are of the opinion that the testimony of these five witnesses was legally relevant, i. e., *material on the ultimate issue of speed at the time of the collision.*" *Id.* (Emphasis added).

Despite the equating of relevant and material, it is clear the court was recognizing that the offered evidence must bear upon an issue in the case. *Douglas, supra,* also recognizes that despite relevance and materiality, evidence may be excluded if its value to the trier of the fact is outweighed by some negative factor.

> "Whether the probative value of this testimony on the ultimate issue of excessive speed at the time of the collision was sufficient to justify its admission, in view of the positive testimony on this issue, was a question for the trial court in the exercise of a sound discretion. We may not say that this testimony introduced 'many new controversial points and a confusion of issues' or constituted unfair surprise or 'undue prejudice disproportionate to the usefulness of the evidence.' *Jones v. Terminal R. R. Ass'n of St. Louis,* Mo.Sup., 242 S.W.2d 473, 477." *Id.*

The negative factors which may cause the exclusion of otherwise material and relevant evidence are cataloged by *McCormick, supra,* as follows:

> "First, the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy. Second, the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues. Third, the likelihood that the evidence offered and the counter proof will consume an undue amount of time. Fourth, the danger of unfair surprise to the opponent when, having no reasonable ground to anticipate this development of the proof, he would be unprepared to meet it." (Footnotes omitted).

The Uniform Rules of Evidence have codified these exclusionary principles. Uniform Rules of Evidence, Uniform Rule 45. *Sauer v. Winkler*, 263 S.W.2d 370 (Mo.1954) excludes evidence of prior speed on the ground of prejudice outweighing its utility to the fact finder.

Missouri cases have approached the issue of relevancy from the standpoint of the concept of continuation of the conduct and the concept that the proof offered must be "connected" with the collision in such a way that the conduct of the driver may be said to be continuous. This on the concept that because the speed of a vehicle may be altered, proof of its speed at one point does not prove speed at another unless there is a factor which offers a finding or inference that the speed was constant. *Long v. Mild*, 347 Mo. 1002, 149 S.W.2d 853 (1941). In *Long*, the court was able, by connecting the testimony of various witnesses from point to point, to find that continuity. *Douglas, supra,* relaxed that standard:

> "But the absence of continuous visual observation for a certain distance does not necessarily make prior speed testimony inadmissible. Our instant ruling is in harmony with the principle of the *Long* case." 259 S.W.2d at 358.

Both *Douglas* and *Wood v. Ezell*, 342 S.W.2d 503 (Mo.App.1961), demonstrate

that physical distance (one-half to three-quarters of a mile and a half mile respectively) does not, of itself, make the evidence inadmissible. *Wood* finds support from the constancy of speed admitted by the erring driver which "connected up" the evidence of speed, but other factors are discussed, such as hearing the crash and going to the scene.

What is really involved is the concept of the *likelihood* that the speed at another point continued to the point of collision, and a weighing by the court of all the facts and circumstances to determine if there is a sufficient likelihood that, if the conduct continued, it may be said to be relevant, that is, tending to prove the issuable fact.

A common thread woven into the decisions concerning prior speed, and for that matter most discussions of relevancy, is the notion that the determination of such questions rests in the discretion of the trial court. *Wigmore, supra; McCormick, supra.* This principle is embedded in the law of evidence, but is still at times misapplied. This occurs because judicial discretion is sometimes used to refer to one form of judicial action and at times to another.[1] One useful classification of types of judicial discretion is found in Rosenburg, M., Judicial Discretion of the Trial Court Viewed from Above, 22 Syracuse L.Rev. 635 (1971). Rosenberg distinguishes between discretion which is exercised anew at each level of the judicial process and that discretion which, when exercised by a trial court, is, by rules of review, insulated from appellate revision to a considerable extent. The abstract concept is better understood by examples.

Discretion in the trial court as to refusal of a motion for mistrial on the ground of error in argument is, to a large degree, insulated from review because the initial determination depends upon many factors which may not be as well understood or even perceived by the appellate court as by the trial judge. The instant case, however, affords an example of the judicial discretion which may be exercised anew at each level of review. Discretion as to the admission of evidence on the issue of relevancy does not depend upon court room incidents incapable of perception from the transcript. The appellate court may independently review and reexercise discretion in determining relevancy. *McCormick, supra* at 440, refers only to a "leeway of discretion" in matters of discretion. The facts may put the case on the knife edge so far as relevancy is concerned, or, conversely, there are areas where everyone would concede relevancy, or, at the opposite spectrum, irrelevancy. In the close case, the reviewing court may defer to the trial court's judgment, but on this issue of relevancy, it need not do so. In this area of determination of the relevancy of evidence, the catchwords "abuse of discretion" are of little help in explaining reversal. The reversal of a question of admission or rejection of evidence should rest upon the explication of legal principle.

■ Viewing the facts of the instant case in the light of this analysis, the trial court erred in excluding the offered evidence. It is true that the officer did not keep the defendant's car in view until the collision. The distance it was lost to view was at most 500 to 600 feet. The circumstances of pursuit by the officer and the plaintiff's failure to stop for red light and siren strongly infer a continued pace by the plaintiff. The short time interval and the identity factor involved in the unusual vehicle driven by the plaintiff all support the validity of the inference that the speed of the plaintiff continued to the collision. The plaintiff's speed was a material issue in the case. The trial court erred in denying the defendant's offer of proof.

The defendant also urges the trial court erred in refusing to submit the instruction offered as to the contributory negligence of the passenger in plaintiff's vehicle, asserting the evidence was sufficient to give the instruction. The evidence may be different on retrial, and it would serve no purpose to review the question on this appeal. The parties are apprised by the briefing as to the applicable law concerning the issue if it arises on retrial.

1. See generally, Aldisert, *The Judicial Process* (1976), pp. 742-759.

The judgment is reversed and the cause remanded for a new trial.